WIGGINS CONSTRUCTION COMPANY, Respondent, v. JOINT SCHOOL DISTRICT NO. 3 OF THE VILLAGE OF HALES CORNERS, CITIES OF FRANKLIN AND GREENFIELD, Appellant.

*June 5—June 30, 1967.*

634

For the appellant there was a brief by *Frisch, Dudek, Banholzer & Slattery,* attorneys, and *Philip S. Grelecki* of counsel, all of Milwaukee, and oral argument by *Mr. Grelecki.*

For the respondent there was a brief by *Tyson & Sawyer* and *John J. Tyson,* all of Elm Grove, and oral argument by *John J. Tyson.*

HANLEY, J. There are two issues presented by this appeal: (1) Did the trial court err in finding the work

as constructed by respondent defective as a matter of law, despite the jury verdict to the contrary; and (2) did the trial court in this case properly apply the *Powers* rule in assessing damages against respondent in the sum of $1,800?

The building contract requiring the roof deck to be constructed with a four-inch pitch to the east and to the west was of importance since it was to be used as a classroom and as a means of ingress and egress to the adjoining school building. Proper drainage was essential.

The evidence clearly demonstrates that not only did the roof as constructed lack the proper pitch, but had a reverse pitch so as to form low spots in which water, ice and snow accumulated.

Exhibits produced at trial leave no doubt whatsoever that the walking surface as provided on the roof deck was hazardous. This is true even though it was established that there was drainage away from the doorway.

We find no merit to respondent's argument that the jury answer should stand because the jury believed that since there was some drainage away from the doorway the respondent sufficiently complied with the plans and specifications as amended by the architect.

In oral argument the point was raised by the respondent that the jury should have been able to believe that the architect could orally amend the written contract insofar as the requirements for pitch were concerned, thereby relieving the contractor from liability for work not strictly in conformance with specific requirements.

Under the facts of the instant case this argument is without merit.

A portion of Article 15 of the building contract in question, entitled "Changes in the Work," reads as follows:

"In giving instructions, the Architect shall have authority to make minor changes in the work, not involving extra cost, and not inconsistent with the purposes of the building, but otherwise, except in an emergency endangering life or property, no extra work or change shall be

made unless in pursuance of a written order from the Owner signed or countersigned by the Architect, or a written order from the Architect stating that the Owner has authorized the extra work or change, and no claim for an addition to the contract sum shall be valid unless so ordered."

There was no written order from the owner authorizing a change in the pitch requirement and it is our opinion that this requirement is not a minor but, in fact, a major change in the building contract with regard to the concrete deck.

In an annotation in Anno. 66 A. L. R. 649, entitled Building Contracts: Effect of Stipulation that Alterations or Extras Must Be Ordered in Writing, it is stated, at page 651:

"Stipulations in building and construction contracts requiring written orders for any alterations or extra work are universally held to be valid and binding upon the parties, in the absence of a waiver, modification, or abrogation thereof."

The appellant in the instant case did not waive, modify or abrogate the stipulation that changes must be authorized by written order.

The trial court, in its memorandum decision, stated:

"While the work was substantially performed in conformity with the contract documents, and in a good and workmanlike manner, as found by the jury in answer to questions 1 and 2 of the special verdict, it is undisputed that the deck did not have drainage or pitch to the outward sides of the deck, in much of its area, inasmuch as water stood in depressions in the top of the deck over a substantial area. Thus, that work was defective, as a matter of law, . . .

". . .

". . . Plaintiff went ahead and put on the deck, which has a slight pitch outward in places and backward in others, so that, following the first rainfalls, water stood on large areas of the top surface of the deck. Since the

deck was to be used for foot traffic, which is obvious because of the door in the then existing building opening onto the deck, standing water would create hazards of various kinds, as disclosed by the evidence."

In *Hennington v. Valuch* (1965), 27 Wis. (2d) 130, 133 N. W. (2d) 824, this court found a breach of contract because the contractor failed to perform exactly his part of the agreement. Moreover, in that case as in the instant case, the jury found that the job had been performed in a workmanlike manner.

*Hennington, supra,* is authority for affirming the trial court's decision that the contractor's work was defective by law. In the instant case, the terms of the contract had not been fulfilled.

After the jury had determined that there was no breach of contract, they were not required to answer any question on damages.

The trial court reasoned that the jury had impliedly found the respondent's damages to be $6,214, which was the unpaid balance on the contract, and $289.50, the answer to question 3 of the special verdict as to the counter which was installed separately from the contract, plus interest from date of demand, and costs and disbursements.

The trial court used this figure, $6,503.50, as the jury's verdict and to this amount applied the *Powers* rule after having determined said amount to be excessive. *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

The trial court then held that $1,800 was the amount by which the judgment of $6,503.50 would be excessive.

The finding of the trial court, if based on initially correct premises, was determined by the proper method of measuring damages, namely, what was the reasonable cost of remedying the defects as are remedial without unreasonable expenditure? *Ashland Lime, Salt & Cement Co. v. Shores* (1899), 105 Wis. 122, 81 N. W. 136; *Stern*

*v. Schlafer* (1943), 244 Wis. 183, 11 N. W. (2d) 640, 12 N. W. (2d) 678.

The trial court allowed the appellant as a setoff the sum of $1,800.

We are of the opinion that the trial court erred and that there must be a new trial on the issue of damages alone. The respondent in this case was not suing for damages. This action was brought to recover the unpaid balance on the construction contract.

In the instant case, the jury has not answered the question of damages nor the reasonable method of correcting the defect.

It is peculiarly within the jury's province to answer the question of the reasonable cost of correcting the defect once the court instructs the jury that a defect exists by law.

The jury obviously never considered the issue of damages nor, more particularly, the most reasonable method for curing the defect insofar as it related to the appellant's damages. This is true because the jury found, in effect, no damage to the appellant when it expressly found that the respondent contractor had not breached the contract. The jury having never considered this issue, the trial court's conclusion that the jury had impliedly decided the damage issue is erroneous.

If the credible evidence would allow reasonable minds to differ as to the conclusions to be drawn from the evidence, then this case should have been submitted to the jury for its determination of damages to the appellant in light of the trial court's change of answer on the breach of contract issue.

The trial court, in its memorandum decision, stated:

"In and by the architect's letter dated July 18, 1963 (Exhibit 39), he gave plaintiff the outline specifications for lowering the roof deck of the storage building. He concluded by stating that, in his opinion, the procedures outlined therein for correcting the pitch of the slab are good and will produce the pitches conforming to the

true meaning and intent of the contract documents. Mr. Wiggins testified that the work so outlined would have cost about $1800, which is undisputed in the evidence. He was offered the job of so doing, but did not do so, because he wanted to be paid for it, which defendant declined to do."

The above quotation deals with the proposed method of correcting the defect submitted by Architect Boswell on behalf of respondent Wiggins. This proposal did not involve removal and replacement of the concrete deck. Boswell and Wiggins supported this method as being a reasonable method for correcting the defect.

Wiggins was asked by his attorney what it would cost him to remove and replace the concrete slab. Counsel for the appellant neither objected to this question nor the answer that followed, but, in fact, repeated the question on cross-examination. The question and answer on direct examination read as follows:

"*Q.* To remove and replace, as far as you were concerned, since you were ordered to do that. *A.* We figured it would cost us about $1800 to do that. But there was a perfectly good slab on top of this storage area and why knock it all down and redo it again is kind of wasteful."

The question and answer on cross-examination read as follows:

"*Q.* Now you said the removal of the slab, if it were done by you, would cost $1800? *A.* Yes, sir."

Counsel for appellant now challenges that answer as being improper because the correct form of the question is stated in *Pfeil v. Kemper* (1854), 3 Wis. 284, 286 (*315, *317), as follows:

"The true question to be determined by the court or jury was, not what A. or B. would charge for like services as those rendered by the plaintiff below, but, what were those services really worth. The value of service requiring the exercise of professional or artistic skill, may be

proved by common usage. But even such usage must be established by proving, not what one or another of the particular professions would charge, but what is the usual or customary rule of compensation."

In *Pfeil, supra,* the court was considering the testimony of an expert witness who was not a party to the case. In the instant action, we are concerned with whether or not Wiggins offered to complete the work so that it would conform with the contract, and the reasonable cost necessary to make it conform with the contract. In *Jensen v. Graham* (1930), 200 Wis. 357, 359, 228 N. W. 475, the court held these to be material considerations.

When the work of a party in a lawsuit is defective and he testifies that he is willing to cure the defect, it is only logical to allow him to testify as to what it will cost him to conform the work with the contract.

Rather than having a problem of competence or admissibility of evidence, we have a problem relating to expert opinions which could have been challenged by cross-examination and defense testimony. *Lambrecht v. State Highway Comm.* (1967), 34 Wis. (2d) 218, 148 N. W. (2d) 732.

In the instant case, counsel for the appellant did not cross-examine Wiggins on this particular issue. There is no error in admitting such testimony.

Based on the foregoing discussion, the trial court was correct in concluding that it is undisputed that Mr. Wiggins testified that he could do the work without removing and replacing the slab. This is one suggested method of curing the defect to be found in the transcript.

However, the appellant contends that the only reasonable method of correcting the pitch problem is to remove and replace the slab. Three witnesses testified to this effect.

Therefore, it follows that even though Wiggins testified that he could remove and replace the concrete slab for $1,800, and this was disputed, he also testified that

he could cure the defect without removing or replacing the concrete deck at a cost of $1,800, and this was undisputed.

There still remains a question where more than one inference could be drawn as to the method of remedying the defect without unreasonable cost.

The jury should have been allowed the opportunity of choosing what it felt to be the most reasonable inference and thereafter resolve the damage issue, an issue which heretofore it had not properly considered.

In the case of *Jensen v. Graham, supra,* this court, in granting a new trial for a similar situation said, at page 359:

"The first question submitted to the jury was this: 'Did the plaintiff perform the work in accordance with the written agreement in question in a good workmanlike manner?' The jury answered this question Yes, and pursuant to the instruction of the court did not answer the second question, which asked 'What was the reasonable cost of having the defects in the work remedied so that it would conform with the contract?' As it is undisputed that the oak floors received one coat of shellac and one coat of varnish, while the contract called for two coats of varnish, there was no justification for the finding of the jury that the work was performed in accordance with the written contract. The answer to that question cannot stand, in view of the conceded fact that the work was not done in accordance with the written contract.

"Further material considerations necessary to a determination of the rights of the parties are, whether the plaintiff offered to complete the work so that it would conform with the contract and the reasonable cost of the work necessary to make it conform with the contract. There is evidence in the record bearing upon both of these questions, but it is in dispute, and neither question can be determined by the court so as to direct the entry of the proper judgment. For these reasons there must be a new trial."

We conclude that the trial court's finding that the work was defective as a matter of law is supported by the evi-

dence. We further conclude that the questions pertaining to the reasonable method of correcting the defect and damages are for the jury to determine.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded for further proceedings. The trial court is directed to grant a new trial on the issue of damages.