FARM CREDIT BANK OF ST. PAUL, f/k/a Federal Land Bank of St. Paul, a federally chartered instrumentality of the United States, Plaintiff and Appellee,

v.

Chester A. BRAKKE and Alice Brakke, Defendants and Appellants.

FARM CREDIT BANK OF ST. PAUL, f/k/a Federal Land Bank of St. Paul, a federally chartered instrumentality of the United States, and Kirk Cossette, Plaintiffs and Appellees,

v.

Chester A. BRAKKE, Alice Brakke, individually and as a trustee of Pioneer Life Trust, Nancy Bye, Ronald D. Brakke, individually and as a trustee of E.L. Price Trust, Pioneer Life Trust, Harold Bergman, individually and as a trustee of Common Title Bond & Trust, Common Title Bond & Trust, E.L. Price Trust, Elaine Price Trust, and E.L. Price Bank, Defendants,

Alice Brakke, Defendant and Appellant.

FARM CREDIT BANK OF ST. PAUL, f/k/a Federal Land Bank of St. Paul, a federally chartered instrumentality of the United States, and Kirk Cossette, Plaintiffs and Appellees,

v.

Chester A. BRAKKE, Alice Brakke, individually and as a trustee of Pioneer Life Trust, Nancy Bye, Ronald D. Brakke, individually and as a trustee of E.L. Price Trust, Pioneer Life Trust, Harold Bergman, individually and as a trustee of Common Title Bond & Trust, Common Title Bond & Trust, E.L. Price Trust, Elaine Price Trust, and E.L. Price Bank, Defendants.

Ronald Brakke, Defendant and Appellant.

Civ.Nos. 900417, 910211 and 910212.

Supreme Court of North Dakota.

March 23, 1992.

As corrected April 21, 1992.

Michael D. Nelson (argued) of Ohnstad Twichell, West Fargo, for plaintiffs and appellees.

Alan J. Sheppard (argued), Fargo, for defendants and appellants.

ERICKSTAD, Chief Justice.

Alice and Ronald Brakke appeal from a district court judgment quieting title to two tracts of land and permanently enjoining them from interfering with the legal owners' use of that land. Chester and Alice Brakke also appeal from a county court judgment evicting them from one of the tracts of land. We affirm the county court judgment, and we affirm the district court judgment in part, reverse in part, and remand.

In the early 1980's Chester and Alice were tenants in common, each holding an undivided one-half interest in the two contiguous tracts of land in Cass County involved in these actions, the Cossette land [1] and the Federal Land Bank [FLB] land.[2] Chester personally guaranteed agricultural loans made by Dakota Bank & Trust Co. of Fargo [Dakota Bank], to his son, Ronald. When Ronald defaulted on his loans, Dakota Bank sued Ronald and also commenced a separate action against Chester to recover on the guaranty.

In 1985 Dakota Bank obtained a judgment against Chester and executed on Chester's undivided one-half interest in the two tracts of land. On February 11, 1986, Dakota Bank purchased Chester's undivided one-half interest in the two tracts of land at a sheriff's sale, and after the one year redemption period expired, Dakota Bank received a sheriff's deed. Dakota Bank and Alice then each held an undivided one-half interest in the two tracts of land. However, several documents purporting to convey Chester's interest in the two tracts of land were filed with the Cass County Register of Deeds, and in 1987, Dakota Bank commenced a quiet title and partition action to adjudicate its interest in the two tracts of land.

In *Dakota Bank & Trust Co. v. Federal Land Bank*, 437 N.W.2d 841 (N.D.1989) [*Dakota Bank I*], we affirmed a judgment quieting title to an undivided one-half interest in both tracts of land in Dakota Bank and appointing a referee to partition the land. The judgment in *Dakota Bank I* specified that Dakota Bank's interest in the FLB land was subject to a mortgage given by Alice to Federal Land Bank. In *Dakota Bank & Trust Co. v. Federal Land Bank*, 453 N.W.2d 610 (N.D.), cert. denied, —— U.S. ——, 111 S.Ct. 188, 112 L.Ed.2d 151 (1990) [*Dakota Bank II*], we affirmed a partition judgment awarding the Cossette land to Dakota Bank and the FLB land to Alice, her successors and assigns. On

---

1. The description for the Cossette land is Government Lots 5, 6, and 7 and the SE¼SW¼ of Section 19, Township 138 North, Range 48 West.

2. The description for the FLB land is Government Lots 1 and 2 and the NW¼ of Section 30, Township 138 North, Range 48 West.

April 30, 1990, Dakota Bank conveyed the Cossette land to Kirk Cossette by warranty deed.

Meanwhile, the Farm Credit Bank [FCB][3] commenced a mortgage foreclosure action against Alice to foreclose her interest in the FLB land. In *Federal Land Bank v. Brakke*, 447 N.W.2d 329 (N.D. 1989), we affirmed a judgment foreclosing Alice's interest in the FLB land. FCB purchased Alice's interest in the FLB land at a sheriff's sale and received a sheriff's deed on June 13, 1990.

While the partition action was pending and during the redemption period on the FLB land, various entities asserted conflicting interests in the Cossette land and the FLB land. Joane Kuball and Ronald were convicted of theft of property and attempted theft of property after they harvested some crops and attempted to harvest other crops from the two tracts of land in the summer of 1989. In *State v. Brakke*, 474 N.W.2d 878 (N.D.1991), this court reversed the convictions, holding that a criminal prosecution was not an appropriate means of resolving an ownership dispute between Dakota Bank and Alice, a cotenant in possession.

On January 22, 1990, Alice recorded a "Notice of Lis Pendens" on the FLB land with the Cass County Register of Deeds. The notice was signed by Alice as "co-trustee" of Pioneer Life Trust and asserted that Pioneer Life, a party in FCB's action to foreclose Alice's interest in the FLB land, had an interest in the FLB land. The "Notice of Lis Pendens" identified a pending federal court action in Minnesota which was subsequently dismissed. *Euerle Farms v. Farm Credit Services of St. Paul*, 928 F.2d 274 (8th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 179, 116 L.Ed.2d 141 (1991).

Additionally, a "Notice of Foreclosure and Trustee's Sale" was published in the Fargo Forum on July 2, 9, and 16, 1990. In that notice, Common Title Bond & Trust Company, "by Harold Bergman, Trustee," sought to sell both the Cossette land and

the FLB land. Bergman executed a "Trustee's Deed," dated July 17, 1990, which purported to convey the two tracts of land from Common Title Bond & Trust to E.L. Price Trust.

FCB and Kirk then commenced this district court action to quiet title to both tracts of land and to enjoin the defendants from interfering with their use of that land. The district court granted a temporary restraining order and a temporary injunction in July 1990, prohibiting the defendants from entering the land to harvest crops, or for any other purpose. On May 6, 1991, the district court quieted title to the FLB land in FCB and to the Cossette land in Kirk. The district court also permanently enjoined the Brakkes from interfering with FCB and Kirk's ownership of the two tracts of land.

Meanwhile, FCB also commenced an action in county court to evict Chester and Alice from the FLB land. After a hearing on September 27, 1990, the county court ordered Chester and Alice, and all persons on the FLB land with their consent, to vacate the premises and to remove their personal property.

These consolidated appeals followed.

■ The Brakkes assert that neither the district court, nor the county court, had jurisdiction to hear these actions because FCB is not registered with the Secretary of State, and under Section 10–22–19, N.D.C.C., it cannot sue them in North Dakota. In *Farm Credit Bank v. Rub*, 481 N.W.2d 451 (N.D.1992), we recently reexamined this issue and once again concluded that FCB is a federally chartered corporation rather than a foreign corporation under Section 10–22–19, N.D.C.C., and that FCB is not required to obtain a certificate of authority from the Secretary of State in order to maintain an action in state court. The Brakkes' argument is without merit.

■ Relying upon *Dieter v. Fraine*, 20 N.D. 484, 128 N.W. 684 (1910), the Brakkes claim that the district court and county

---

**3.** The Federal Land Bank is now known as the Farm Credit Bank. *Farm Credit Bank v. Rub,* 481 N.W.2d 451 (N.D.1992).

court actions violated their homestead rights under Article XI, § 22, N.D. Const. In *Dieter*, 128 N.W. at 686, this court held that "[a]n execution for the enforcement of a judgment obtained upon a debt not within the classes enumerated [in the predecessor statute to Section 47–18–04, N.D.C.C.] may be levied upon the homestead only in case it appears after due application to the court and an appraisement had that the property ... exceeds in value the amount of the homestead exemption." *Dieter* involved an execution levy for a money judgment upon a creditor's claim for services rendered to an absent husband and did not involve a mortgage foreclosure. In *Farm Credit Bank v. Stedman*, 449 N.W.2d 562 (N.D. 1989), we distinguished *Dieter* and held that Art. XI, § 22, N.D. Const., does not prohibit the enforcement of a real estate mortgage against a homestead. *See also, Farm Credit Bank v. Rub, supra.* The Brakkes mortgaged their homestead and therefore their homestead rights were not violated.

The Brakkes contend that the district court erred in quieting title to the FLB land in FCB and to the Cossette land in Kirk. They assert that Common Title Bond & Trust sold the two tracts of land to E.L. Price Trust pursuant to advertisement and "Trustee's Deed." They argue that the district court erred in determining that the trustee's deed was ineffective and that E.L. Price Bank did not have any interest in the property. They also claim that the district court erred in cancelling and discharging the Notice of Lis Pendens filed by Alice.

Neither E.L. Price Bank, nor E.L. Price Trust, have appealed from the district court judgment and any issue about their interest in the property is not properly before us. *Baukol–Noonan, Inc. v. Bargmann*, 283 N.W.2d 158 (N.D.1979). Moreover, contrary to the Brakkes' argument, *Dakota Bank I, Dakota Bank II,* and *Federal Land Bank v. Brakke,* are not a "farce on their face." Dakota Bank obtained the Cossette land in *Dakota Bank I* and *Dakota Bank II,* and Kirk obtained that land by a warranty deed from Dakota Bank. Although Alice was awarded the FLB land in the partition judgment in *Da-*

*kota Bank II,* her interest in that land was lost through foreclosure in *Federal Land Bank v. Brakke.*

■ Common Title Bond & Trust, the Brakkes, and their assigns, were parties to those prior actions and the judgments in those actions are res judicata. *Rott v. Mittleider,* 441 N.W.2d 645 (N.D.1989); *Peacock v. Sundre Township,* 372 N.W.2d 877 (N.D.1985); *Texaro Oil Co. v. Mosser,* 299 N.W.2d 191 (N.D.1980); *Heasley v. Glinz,* 142 N.W.2d 606 (N.D.1966). E.L. Price Bank, E.L. Price Trust, Elaine Price Trust, and Harold Bergman are also bound by those judgments by virtue of Sections 32–19–39, 32–19–40, and 28–05–07, N.D.C.C. We conclude that the district court did not err in cancelling Alice's lis pendens and determining that the trustee's deed did not convey any interest to E.L. Price Bank. The district court did not err in quieting title to the two tracts of land in FCB and in Kirk, respectively.

The Brakkes contend that the district court abused its discretion in entering a permanent injunction. They argue that the injunction is too broad. FCB and Kirk respond that the district court did not abuse its discretion because a permanent injunction is the only means to prohibit the Brakkes from interfering with their lawful ownership of the two tracts of land.

■ Section 32–05–04, N.D.C.C., authorizes a final injunction to prevent the breach of an obligation when damages are insufficient to afford adequate relief. *Gunsch v. Gunsch,* 69 N.W.2d 739 (N.D. 1954). Injunctive relief is appropriate to prevent a threatened disturbance in the peaceable use, enjoyment, and possession of real property. *Id.* The decision to grant or deny injunctive relief rests in the sound discretion of the trial court, and its determination will not be reversed on appeal absent an abuse of discretion. *State v. Jensen,* 331 N.W.2d 42 (N.D.1983). A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *Wall v. Penn. Life Ins. Co.,* 274 N.W.2d 208 (N.D.1979).

In *Brakke v. Rudnick,* 409 N.W.2d 326 (N.D.1987), we reviewed an injunction prohibiting Ronald and Alice from serving any pleading or other document within a judicial district without approval by the district court. We analyzed federal cases in which injunctive relief had been granted to prevent future actions by parties with a long history of commencing frivolous and vexatious actions. *In the Matter of Hartford Textile Corp.,* 681 F.2d 895 (2nd Cir.1982), *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1195, 75 L.Ed.2d 439 (1983); *In re Martin–Trigona,* 573 F.Supp. 1245 (D.C.Conn.1983), *aff'd in part, vacated in part, and remanded,* 737 F.2d 1254 (2nd Cir.1984), *on remand,* 592 F.Supp. 1566 (D.C.Conn.1984), *aff'd,* 763 F.2d 140 (2nd Cir.1985), *cert. denied,* 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986); *Kane v. City of New York,* 468 F.Supp. 586 (S.D.N.Y.), *aff'd,* 614 F.2d 1288 (2nd Cir.1979); *Ruderer v. Department of Justice,* 389 F.Supp. 549 (S.D.N.Y.1974).

In *Brakke v. Rudnick, supra,* we said that although the Brakkes had been involved in many cases before this court, those actions did not involve the same transactions or factual circumstances and they had not always been plaintiffs in those actions. We concluded that it had not been established that the Brakkes' conduct approached the conduct described in the federal cases, and we reversed the trial court's decision to enjoin them from filing any pleading or document without first obtaining court approval.

In *State v. Jensen,* 331 N.W.2d 42 (N.D. 1983), we concluded that the trial court did not abuse its discretion in permanently enjoining a state penitentiary inmate from prematurely filing liens that had no basis in law [4] against state employees. We rejected the inmate's argument that the trial court's oral statement prohibiting the filing of "any further documents" was overbroad because the court's final judgment did not

include that language. We concluded that the injunction was properly limited to liens that had no basis in law.

■ In this case, the injunction restrained the Brakkes from the following conduct with respect to the Cossette and the FLB land:

"A. . . . .

"(a) Holding or conducting any 'trustee's sale' of the above-described real property.

"(b) Filing or depositing with any office (including, without limitation, any clerk of court, any bankruptcy court, any register of deeds, any disciplinary board of any bar association, any judicial conduct commission, any newspaper publisher, any taxing authority, etc.), whether within or outside the State of North Dakota, any document or piece of paper that purports to transfer, affect, attack or assert any right, title or interest in or to the above-described real property, or any crops growing thereon or grown thereon, from and after January 1, 1989 (Cossette land) and from and after January 1, 1990 . . . [FLB land].

"(c) Entering upon the above-described real property for the purpose of removing any crops or for any other purpose.

\*    \*    \*    \*    \*    \*

"B. . . . .

"(a) Molesting, hindering, harassing, annoying or interfering with the present titleholders of the above-described real property (plaintiffs above-named), their respective successors and/or assigns, and their respective agents.

"(b) Interfering with the quiet enjoyment and possession of the above-described real property by the present titleholders (plaintiffs above-named),

---

**4.** In *State v. Jensen,* 331 N.W.2d at 46, n. 6, we said:

"Section 35–01–04, N.D.C.C., provides, in part:

" 'A lien or security interest is created by contract or by operation of law. No lien arises by operation of law until the time at

which the act to be secured thereby ought to be performed.'

"No act need be performed in this case until a judgment is entered in favor of Jensen on his civil-rights claim, and therefore no lien can arise by operation of law until that time."

their respective successors and/or assigns, and their respective agents.

"C. This permanent injunction shall not impair the alleged right of third-parties (*i.e.*, parties not involved in the above-entitled action, either as plaintiffs or as defendants) to pursue any alleged personal property interest they may allegedly have in the following structures allegedly located ... [FLB land] in the County of Cass, State of North Dakota, to-wit:

"—One (1) 160′ × 120′ redwood pole shed with green doors;

"—One (1) 60′ × 100′ pole shed with brand name Lester Building;

"—One (1) 50′ × 80′ farm shop;

"—Four (4) 3,000 bu. Butler grain bins;

"—Two (2) 6,000 bu. Butler grain bins; and

"—Three (3) 3,400 bu. Butler grain bins."

Paragraph C specifies that the injunction does not impair any rights of third persons (i.e., parties not involved in the district court action) to pursue any interests in certain personal property on the FLB land. The district court did not determine ownership of any of that personal property. The resolution of ownership of that property remains to be determined and may be raised by third parties not involved in the district court action. The district court thus did not err in including paragraph C in the injunction.

Paragraphs A.(a), (c), and B.(b), essentially enjoin the Brakkes from conducting a "trustee's sale" or removing crops from the two tracts of land and from interfering with the peaceable use, enjoyment, and possession of the two tracts of land by FCB and Kirk. In *Gunsch v. Gunsch, supra,* this court affirmed injunctive relief to protect the legal owner's peaceable use and enjoyment of real property. In this case, there was evidence of a continuing pattern of interference by the Brakkes with the legal owners' use and enjoyment of the property. Under these circumstances, damages are insufficient to afford adequate relief for the deprivation of the peaceful use and enjoyment of the property, and the trial court did not abuse its discretion in granting the injunctive relief set forth in those paragraphs.

However, paragraphs A.(b) and B.(a) impose much broader restrictions on the Brakkes. Paragraph A.(b) enjoins the Brakkes from filing any document affecting any right to or interest in the property "with any office (including, without limitation, any clerk of court, any bankruptcy court, any register of deeds, any disciplinary board of any bar association, any judicial conduct commission, any newspaper publisher, any taxing authority, etc.), whether within or outside the State of North Dakota."

The broad limitations in paragraph A.(b) unduly restrict access to the courts under Article I, § 9, N.D. Const. In *In re Martin–Trigona,* 737 F.2d 1254 (2d Cir.1984), *on remand,* 592 F.Supp. 1566 (D.C.Conn. 1984), *aff'd* 763 F.2d 140 (2nd Cir.1985), *cert. denied,* 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986), the court considered an injunction which allegedly denied access to the courts. In that case a pro se litigant had filed at least 250 lawsuits over a span of ten years and had distinguished himself by his abuse of the legal processes. The court noted that the district court's permanent injunction did not prohibit the litigant from access to the courts, but reasonably required the litigant to inform the court of pertinent facts concerning any filed document and to obtain leave of the court to file the document. *See also Brown v. Gibson,* 571 F.Supp. 1075 (W.D.Mo.1983) [pro se litigant enjoined from filing civil action without leave of court]; *People of the State of Colorado v. Carter,* 678 F.Supp. 1484 (D.Colo.1986) [pro se litigant enjoined from proceeding as plaintiff in United States District Court of Colorado without representation of an attorney licensed to practice in State of Colorado and admitted to practice in federal district court]; *Lysiak v. Commissioner of Internal Revenue,* 816 F.2d 311 (7th Cir.1987) [pro se litigant enjoined from appealing without first seeking leave of court to proceed on appeal].

Although these cases demonstrate that access to the courts may be limited under

some circumstances and conform with our decisions that the open courts provision of our state constitution does not confer an absolute right of access to courts [*e.g., Andrews v. O'Hearn,* 387 N.W.2d 716 (N.D.1986)], we believe paragraph A.(b) unduly restricts access to the courts by precluding the filing of documents regarding the two tracts of land "without limitation." *Compare State v. Jensen,* 331 N.W.2d 42 (N.D.1983) [language of judgment did not include broad proscription against filing "any further documents"].

Paragraph A.(b) also precludes, without limitation, the Brakkes from filing any document concerning those tracts of land with any newspaper publisher. That provision would prohibit the Brakkes from submitting a letter to the editor of a newspaper about the land and raises serious first amendment implications. *See New York Times Company v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), and *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971) [prior restraint of expression bears heavy presumption against constitutional validity]. Paragraph B.(a) also enjoins the Brakkes, without limitation, from "[m]olesting, hindering, harassing, annoying or interfering with the present titleholders." Although we do not condone that conduct, we believe that language is vague and also raises first amendment implications.

FCB and Kirk nevertheless argue that the Brakkes' wide range of frivolous and abusive conduct[5] warrants this broad injunction. Although that conduct may merit narrowly tailored injunctive relief against the Brakkes, we believe the language in paragraphs A.(b) and B.(a) is too broad. We conclude that the trial court abused its discretion in granting the injunctive relief

in paragraphs A.(b) and B.(a). Accordingly, we reverse the permanent injunction in paragraphs A.(b) and B.(a), and we remand to the district court with instructions to delete those paragraphs.

The Brakkes also contend that the district court erred in dismissing Alice's counterclaim against Kirk.[6] During the spring of 1989, Ronald planted wheat on the Cossette land. On July 13, 1989, the partition judgment was entered awarding Dakota Bank the Cossette land and awarding Alice the FLB land; however, the partition judgment was silent about the 1989 crop. Dakota Bank hired Kirk to harvest the crop on the Cossette land. Kirk also entered into a contract to purchase that land from Dakota Bank. In August 1989, Joane Kuball and Ronald harvested some of the crop from the Cossette land, and they were arrested and convicted of theft of property and attempted theft of property. Kirk subsequently harvested the remainder of the 1989 crop from the Cossette land. Alice's counterclaim against Kirk alleged that she owned the Cossette land and sought damages for trespass and conversion of the 1989 crop.

In *State v. Brakke,* 474 N.W.2d 878 (N.D.1991), we reversed the convictions against Ronald and Kuball for theft of property and attempted theft of property. We agreed with the general rule that "absent an express direction in the partition judgment, ownership of crops planted by a cotenant in possession of property which is subsequently partitioned to another cotenant ordinarily passes with the land to the other cotenant." *State v. Brakke, supra,* 474 N.W.2d at 881. However, we recognized that there were "equitable exceptions" to that rule and under some circumstances, a cotenant may have an equitable

<hr>

5. Their argument relies upon the following conduct: contempt proceedings in a Texas bankruptcy proceeding; frivolous litigation in foreign jurisdictions; bogus trusts to harass innocent victims; frivolous disciplinary complaints against lawyers and judges involved in this case; publication of legal ads purporting to advertise the sale of real property; and filing false 1099 forms with the Internal Revenue Service to create tax problems for their "victims."

6. The Brakkes also contend that the district court erred in dismissing Alice's counterclaim against FCB. However, her counterclaim against FCB alleged that she owned the two tracts of land and that the district court action violated her homestead rights. We have already rejected those claims earlier in this opinion. Alice's counterclaim against FCB did not assert that FCB converted the 1989 crops on the FLB land.

claim for service in cultivating the land for the benefit of another. We quoted with approval from *Zeigler v. Blecha*, 59 N.D. 258, 260, 229 N.W. 365, 366 (1930):

" 'But it is an equally well settled rule, of practically universal recognition, that "one who sows, cultivates, and harvests a crop upon the land of another is entitled to the crop as against the owner of the land, whether he came to the possession of the land lawfully or not, provided he remains in possession of the land till the crop is harvested".... And *where the grantee in a sheriff's deed permits a person then in occupancy of the land to continue in uninterrupted possession thereof, and, while in such possession, to sever and thresh crops which he had previously planted, then such crops become the property of the occupant, and the owner of the land under the sheriff's deed is not the owner of such crops.* '" *State v. Brakke, supra,* 474 N.W.2d at 881. [Emphasis in original.]

We observed that one of the primary issues in the criminal prosecution against Ronald and Kuball was whether Dakota Bank was entitled to the growing crop. We concluded that at the time of the arrest there was a "legitimate dispute" whether Dakota Bank permitted the Brakkes to continue in uninterrupted possession of the land and to harvest the 1989 crop. We held that a criminal prosecution was not an appropriate means to resolve that ownership dispute between the Brakkes and Dakota Bank, and we remanded for entry of judgment of acquittal.

We recognize that the district court decision in this case was rendered before our decision in *State v. Brakke.* However, under the general rule stated in *State v. Brakke,* because the 1989 partition judgment awarded the Cossette land to Dakota Bank, the 1989 crop on that land also passed with the land to Dakota Bank. Although at the time of the arrest of Ronald and Kuball, there was a "legitimate dispute" about whether or not Dakota Bank had permitted the Brakkes to continue in uninterrupted possession of the Cossette land, Dakota Bank did not permit the Brakkes to continue in uninterrupted pos-

session of that land after the arrest. Instead, Dakota Bank, through Kirk, harvested the 1989 crop. Under the exception stated in *State v. Brakke,* the 1989 crop passed with the land to Dakota Bank and, as a matter of law, the Brakkes were not the owners of the 1989 crop. However, depending upon the equities, the Brakkes might be entitled to an accounting for their costs associated with planting, cultivating, fertilizing, and spraying for weeds and bugs before the partition judgment was entered. *See State v. Brakke.* Although we express no opinion on the equities of a claim for services rendered before entry of the partition judgment, under these circumstances, we remand to the district court for the limited purpose of determining whether or not the Brakkes are entitled to compensation for those services.

The Brakkes contend that the county court erred in determining that it had jurisdiction over the eviction action. They assert that any eviction proceeding should have taken place after, or as part of, the mortgage foreclosure by the Federal Land Bank, which we affirmed in *Federal Land Bank v. Brakke,* 447 N.W.2d 329 (N.D. 1989).

■ Section 33–06–01(5), N.D.C.C., provides:

"An action of eviction to recover the possession of real estate is maintainable in the proper county court when:

\* .\* \* \* \* \*

"5. A party continues in possession after a sale of the real property under mortgage, execution, order, or any judicial process and after the expiration of the time fixed by law for redemption, or after the execution and delivery of a deed, or after the cancellation and termination of any contract for deed, bond for deed, or other instrument for the future conveyance of real estate or equity therein."

Under Section 33–06–01(5), N.D.C.C., the county court had jurisdiction of this eviction action. *See also* Section 27–07.1–17(1)(d), N.D.C.C.; *United Bank of Bis-*

*marck v. Trout*, 480 N.W.2d 742 (N.D. 1992).

The Brakkes assert that the eviction was improper because the district court awarded her the FLB land in the partition action culminating in *Dakota Bank II*. However, their argument ignores that Alice's interest in the FLB land was foreclosed in *Federal Land Bank v. Brakke*, 447 N.W.2d 329 (N.D.1989).

The Brakkes claim that the county court erred in failing to allow them to enter the property to remove their personal property. At the eviction hearing, the county court observed:

> "Well, the law requires ten days irrespective of the intentions of the Plaintiffs in this case—the Plaintiff in this case and whether or not they would be willing to consent to any additional period of time would be something that would have to be worked out between the parties. But the law allows or requires a ten day period after entry of judgment."

The county court judgment required the Brakkes to vacate the premises and to "remove [their] personal property from said premises."

 This record does not indicate that the county court failed to allow the Brakkes to enter the property to remove their personal property. The Brakkes must provide a record of any alleged error [*Dakota Bank & Trust Co. v. Federal Land Bank*, 437 N.W.2d 841 (N.D.1989)], and in the absence of a record, we are unable to review their assertions. *City of Minot v. Freelander*, 368 N.W.2d 514 (N.D. 1985). On this record, we cannot say that the county court committed any error regarding the removal of personal property from the FLB land.

 The Brakkes also contend that the county court erred in denying them their right of first refusal under the Agricultural Credit Act of 1987. That argument should have been raised in the foreclosure proceedings. Moreover, that argument was not raised in the trial court and cannot be raised for the first time on appeal. *Production Credit Ass'n v. Davidson*, 444 N.W.2d 339 (N.D.1989).

We affirm the county court eviction judgment, and we affirm the district court judgment in part, reverse in part, and remand for proceedings consistent with this opinion.

ERICKSTAD, C.J., VANDE WALLE and LEVINE, JJ., VERNON R. PEDERSON, Surrogate Judge and SMITH, District Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting due to the disqualification of Meschke, J. SMITH, D.J., sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. Gierke III. Justice Johnson not being a member of this Court at the time this case was heard did not participate in this decision.