Thomas E. LIEN and Judith J. Lien, Plaintiffs and Appellees,

v.

McGLADREY & PULLEN, Defendant and Appellant.

No. 18220.

Supreme Court of South Dakota.

Argued Aug. 31, 1993.

Decided Dec. 15, 1993.

Rehearing Denied Jan. 20, 1994.

Glen H. Johnson, Johnson Huffman P.C., Rapid City, for plaintiffs and appellees.

Allen G. Nelson, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, Michael J. Bleck, Oppenheimer, Wolff & Donnelly, Minneapolis, MN, Richard L. Miller, Jr., McGladrey & Pullen, Chicago, IL, for defendant and appellant.

SABERS, Justice.

A sole-shareholder of construction company was taxed as a result of a corporate redemption of preferred stock claimed to be based upon advice received from accounting firm. Jury found firm liable for professional negligence. Firm appeals. We reverse and remand on damages.

### FACTS

In 1981, Tom Lien Construction, Inc. (Lien Construction)[1] issued 2,400 shares of preferred stock to Tom Lien (Lien). Lien Construction redeemed Lien's preferred stock in 1985 in exchange for cancellation of Lien's personal debt to the corporation. Lien claims the redemption was done on the advice of his accounting firm, McGladrey & Pullen (McGladrey), who prepared his corporate and individual tax returns for that year.

---

1. Lien construction was a Subchapter S corporation solely owned by Lien at all times material herein.

Liens were subsequently audited by the Internal Revenue Service (IRS) and their 1985 individual tax return was reviewed. The IRS assessed additional tax and interest resulting from the redemption of the preferred stock. Lien paid the IRS in 1990.

Lien filed a complaint against McGladrey alleging negligence on the part of McGladrey in its advice and representation with respect to the redemption of the 2,400 shares of preferred stock. The jury found for Lien and awarded damages in the amount of $95,392.00. McGladrey appeals.

## DISCUSSION

■ Accountants are held to the same standard of reasonable care as are other professional people, including lawyers, doctors and architects. *Vernon J. Rockler & Co. v. Glickman, Isenberg, Lurie & Co.*, 273 N.W.2d 647, 650 (Minn.1978). To recover in professional negligence against McGladrey, Lien needed to prove a duty (the existence of an accountant-client relationship), the breach of that duty (the failure of McGladrey to discharge its duty of reasonable care), factual causation (that "but for" the advice, Lien would not have made the redemption), proximate causation (that increased tax liability was a foreseeable consequence of McGladrey's advice), and damages (that Lien actually suffered increased tax liability due to McGladrey's advice). *Id.* (citation omitted). *See also Thomas v. Cleary*, 768 P.2d 1090, 1092 (Alaska 1989) (elements of a cause of action for professional negligence are duty, breach of that duty, proximate cause and actual loss or damage) (citing *Linck v. Barokas & Martin*, 667 P.2d 171, 173 n. 4 (Alaska 1983); *Budd v. Nixen*, 6 Cal.3d 195, 98 Cal. Rptr. 849, 491 P.2d 433, 436 (1971); *Olson, Clough & Straumann, CPA's v. Trayne Properties*, 392 N.W.2d 2, 4 (Minn.App. 1986)).

### 1. Implied Contract

■ Jury Instruction No. 19 provided the standard of care which applies to the conduct of auditors or certified public accountants.

.    .    .    .    .

This standard, which requires that an accountant exercise that degree of skill and competence reasonably expected of persons in his profession in the community, *is implied in the contract for professional services* and is brought about by the accountant-client relationship. *The contract, therefore, creates the relationship out of which arises the duty* to exercise reasonable care to render skillful performance according to local professional standards. (Emphasis added.)

McGladrey argues that Lien failed to prove that a written contract to provide *personal* tax planning advice existed. According to McGladrey, absent such a contract, there could be no duty to exercise reasonable care and therefore, no breach of that duty.

SDCL 53–1–3 provides that "[a] contract is either express or implied. An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct." SDCL 53–1–3. There is no doubt that a contract existed between McGladrey and Lien Construction creating an accountant-client relationship. This accountant-client relationship was outlined yearly in the form of a "letter of understanding" signed by Clayton Trulson of McGladrey and Lien of Lien Construction. According to the "letter," in addition to initiating ideas or observations that McGladrey believed would help achieve the objectives of Lien Construction, McGladrey agreed to respond to inquiries Lien "might have about financial or other business matters."

■ An implied contract, a fiction of the law adopted to achieve justice where no true contract exists, is a contract, the existence and terms of which are manifested by conduct. *Weller v. Spring Creek Resort, Inc.*, 477 N.W.2d 839, 841 (S.D.1991) (citations omitted).

A contract is implied in fact where the intention as to it is not manifested by direct or explicit words by the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used, or acts done by them, or other pertinent circumstances attending the transaction.... [The] facts are

viewed objectively and if a party voluntarily indulges in conduct reasonably indicating assent he may be bound even though his conduct does not truly express the state of his mind.

*Id.* (citations omitted). *See also Famous Brands, Inc. v. David Sherman Corp.,* 814 F.2d 517, 520 (8th Cir.1987) (citations omitted). Under South Dakota law, the existence of an implied contract between parties creates a genuine issue of material fact that must be decided by a jury. *Id.* at 520–21.

As noted above, in the express contract between McGladrey and Lien Construction, McGladrey agreed to initiate ideas or observations that McGladrey believed would help achieve the objectives of Lien Construction as well as respond to inquiries Lien "might have about financial or other business matters." Following the close of Lien Construction's fiscal year on March 31, 1984, McGladrey prepared a document listing items for discussion that they had noted during the audit. Listed as an item for discussion under Stockholder's Equity was the point that "Tom Lien Construction, Inc. should consider paying off the note receivable by permanently retiring preferred stock." Lien testified that in the fall of 1984, he asked auditor Dan Loveland of McGladrey whether he could exchange the preferred stock for the note receivable. Lien claims Loveland told him he would check it out and get back to him. Lien testified he called Loveland again in November, 1984, and Loveland told him that he did not see any problem and that he could go ahead with it (exchange the stock for the note).[2] According to Lien, this was the advice that he relied upon when he redeemed the stock for the note. We find sufficient facts upon which the jury could have found an implied contract between McGladrey and Lien creating an accountant-client relationship and the duty to exercise reasonable care.

### 2. Advice and Reasonable Reliance

■ McGladrey argues that Lien failed to prove that McGladrey advised Lien to redeem the stock, or that, if he were so advised, his reliance upon that advice was reasonable. Whether tax advice was given to Lien and whether he reasonably relied upon that advice are questions of fact, to be determined by the trier of fact, the jury. *See Rockler,* 273 N.W.2d at 650. *See generally Halla Nursery, Inc. v. Baumann–Furrie & Co.,* 438 N.W.2d 400, 402–03 (Minn.Ct.App. 1989) (citation omitted) (whether a client negligently dealt with its accountant and whether the negligence contributed to the accountant's failure to perform its contract in accordance with generally accepted accounting standards are fact questions for the jury's determination), *rev'd on other grounds,* 454 N.W.2d 905 (1990). Our responsibility on appeal is to determine whether these factual findings are clearly erroneous. *Rockler,* 273 N.W.2d at 650. These "factual findings can be held clearly erroneous only if upon a review of the entire evidence we are left with the definite and firm conviction that a mistake has been made." *Id.* (citations omitted).

As noted above, Lien testified that he was advised by McGladrey that he could go ahead with the redemption of the stock and that he relied upon this advice when he redeemed the stock. Given this testimony, the letter of understanding, the notation by McGladrey that Lien Construction should consider redeeming the stock for the outstanding loan, and that McGladrey prepared the tax return of Lien Construction and the personal income tax return of the Liens, McGladrey has failed to show that the jury's finding that Lien reasonably relied upon McGladrey's advice was clearly erroneous.

### 3. Avoidable Tax

■ McGladrey's next alleged error is that Lien failed to prove that the additional tax was avoidable. Once again, whether Lien successfully proved that the tax was avoidable is a question of fact, for the trier of fact, the jury. *See Rockler,* 273 N.W.2d at 650 (whether client established damages is a finding of fact).

Lien's expert witness (whom McGladrey classifies as a "non-tax" expert) testified that

---

**2.** Lien also testified that prior to the audit in 1984, he asked Loveland if it was possible to clean up his financial statement. Loveland indicated at this time that he could exchange his note for the preferred stock.

had Lien held his preferred stock until 1991, he would have been able to "deduct his $240,000 preferred stock as part of the [tax] basis against his proceeds," and would not have suffered any damages. McGladrey's own expert witness (whom McGladrey classifies as a "tax" expert), when asked "whether this tax that was imposed could have been avoided in any event" testified that "once the redemption took place, it's highly unlikely that anything could have been done to eliminate that tax obligation." McGladrey's expert further testified that if the jury determined that Lien had asked for and received tax advice which resulted in the redemption of the preferred stock, the conduct of McGladrey did not meet professional standards and he placed damages at approximately $75,000. Whether Lien failed "to provide an opinion from a tax expert regarding the issue of whether a tax was paid which could have been avoided," is immaterial because the jury could reasonably conclude that McGladrey provided one. Our review of the record indicates sufficient evidence upon which the jury could determine that, absent McGladrey's negligence, Lien would not have incurred the additional tax. McGladrey has failed to show otherwise. Therefore, the damages sustained would be final but for the following alleged error.

#### 4. Restrictions on the Defense

■ McGladrey argues that the trial court erred in refusing to allow testimony by its expert and cross-examination of Lien's expert regarding damages. According to McGladrey, it was precluded from cross-examining Lien's expert regarding his knowledge of all the tax issues relating to the transaction, specifically, the "flip side" of the transaction whereby Lien received $48,680 and did not have to repay the $200,000 note and $56,120 in accrued interest. McGladrey also argues that if its expert would have been

allowed to testify, his testimony would have demonstrated that Lien received benefits as a result of the issuance of the preferred stock which included dividends, and that, because Lien did not have to pay the tax until 1990, Lien's expert erred in failing to factor in the time value of money.[3]

A review of the record indicates that McGladrey asked Lien's expert whether he had come across any information leading him to believe that Lien had a constructive dividend problem in 1982. Lien objected, the witness stated he did not have an opinion, and the trial court appeared to sustain the objection on the ground of relevance. Following a bench conference, McGladrey resumed questioning, but on a different topic. When McGladrey's expert was asked whether Lien's damage claim took into consideration everything that should be considered in assessing the damages, he testified that Lien received benefits as a result of the issuance of the preferred stock and the redemption of the stock in exchange for extinguishment of the note. Lien objected and moved to strike the entire answer, arguing that it was legally impermissible to attempt to tell the jury that they should consider other items of benefit to Lien or the corporation. The jury was excused and McGladrey was allowed to make an offer of proof. The offer of proof was that if McGladrey's expert was permitted to testify, he would testify that Lien received benefits from the issuance of the preferred stock including revenue, dividends, and compensation and that Lien's expert failed to consider these benefits and the time value of money in computing damages. The objection was sustained.

■ Although the jury was accurately instructed to reduce the damage award by "appropriate credit shown by the evidence,"[4]

---

3. According to McGladrey's reply brief, its expert would have also stated that the $192,000 dividend assessed by the IRS was in fact due to the liquidation of Lien's unpaid note rather than the redemption of the stock. McGladrey, however, did not address this in its offer of proof.

4. Jury Instruction No. 26 provided in part:
   If you decide for the Plaintiffs on the question of liability you must then fix the amount of money which will reasonably and fairly compensate them for any of the following elements of

loss or harm suffered in person or property proved by the evidence to have been proximately caused by the negligence of the Defendant, whether such loss or harm could have been anticipated or not, namely:
   1. The amount of income tax liability incurred, if any, as a proximate result of the negligence of the Defendant *less appropriate credit shown by the evidence.*

the instruction was meaningless because McGladrey was denied the opportunity to present expert testimony or evidence to establish the "appropriate credit." This was error. The data upon which an expert rests his opinion may be fully inquired into upon cross-examination. And the incorrectness or insufficiency of such data may be established by calling other expert witnesses and questioning them as to their opinion of the validity of the prior witness' grounds. 3A John Henry Wigmore, Evidence in Trials at Common Law § 992 (Chadbourn rev. 1970).

While the precise scope of cross-examination of expert witnesses rests within the discretion of the trial court, this discretion should not be applied in a narrow or restricted manner, especially with respect to experts who deal in opinions as to matters truly not in the common knowledge and experience of laymen.

1 McCormick on Evidence § 13 (John William Strong et al. eds., 4th ed. 1992) (*citing Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir.1976), *cert. denied,* 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 ("[T]he weakness in the underpinnings of [expert's] opinions may be developed upon cross-examination and such weakness goes to the weight and credibility of the testimony.")).

On cross-examination in the process of probing the witness' qualifications, experience, bases, and assumptions opposing counsel may require the expert to disclose the facts, data, and opinions underlying the expert's opinion not previously disclosed. With respect to facts, data, or opinions forming the basis of the expert's opinion, disclosed on direct examination or during cross-examination, the cross-examiner may explore whether, and if so how, the non-existence of any fact, data, or opinion or the existence of a contrary version of the fact, data, or opinion supported by the evidence, would affect the expert's opinion. Similarly the expert may be cross-examined with respect to material reviewed by the expert but upon which the expert does not rely. Counsel is also permitted to test

the knowledge, experience, and fairness of the expert by inquiring as to what changes of conditions would affect his opinion, and in conducting such an inquiry, subject to the requirements of Fed.R.Evid. 403, the cross-examiner is not limited to facts finding support in the record.

1 McCormick on Evidence § 13.

■ In a professional negligence action, the appropriate measure of damages is the difference between what the taxpayer would have owed absent the negligence, and what they paid because of their accountant's negligence, plus incidental damages. *Thomas,* 768 P.2d at 1091–92 n. 5 (trial court erred in allowing taxpayer to recover as damages all taxes owed upon the corporate liquidation). Just as Lien's expert was permitted to testify regarding the damages incurred as a result of the negligent advice, so must McGladrey be allowed to elicit testimony discrediting Lien's computations and demonstrating the benefits which Lien received. *See generally Wiggins Constr. Co. v. Joint Sch. Dist. No. 3,* 35 Wis.2d 632, 151 N.W.2d 642, 647 (1967) (citation omitted) (expert opinions may be challenged by cross examination and defense testimony). Because we reverse and remand for a proper determination as to damages, we do not reach McGladrey's allegation that "SDCL § 21–1–13.1 does not contemplate an award of prejudgment interest where the damages were highly uncertain as to amount and legal obligation."

### 5. Misconduct by Court and Counsel

■ McGladrey argues that conduct on the part of Counsel for Lien and Circuit Judge Fitzgerald constituted prejudicial error. According to McGladrey, Lien's counsel asked unfair leading questions of Lien's expert and "factually unsupported" questions in cross-examination of McGladrey's expert and Judge Fitzgerald erroneously interrogated McGladrey's witnesses and improperly commented on a material fact at issue.

While we agree that Judge Fitzgerald may have temporarily lost sight of his role in this proceeding (that of judge rather than advo-

2. The cost incurred by the Plaintiffs in connection with the IRS audit[.] (Emphasis add-

ed).

cate of a client's interests), the record indicates that McGladrey's counsel failed to object to either Judge Fitzgerald's or Lien's counsel's interrogation of their expert witness. "[S]uch objections must be made to the trial court in order to allow it to correct its mistakes, and an objection not properly raised below cannot be reviewed by this court on appeal." *Anderson v. Johnson,* 441 N.W.2d 675, 677 (S.D.1989) (citations omitted). Additionally, Jury Instruction No. 3 could have corrected any prejudicial effect Judge Fitzgerald's questioning may have had upon the jury.[5] McGladrey has failed to demonstrate prejudicial error. We affirm all issues except issue 4, which we reverse and remand for a proper determination of damages.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST, J., concurs specially.

HENDERSON, J., dissents.

WUEST, Justice (concurring specially).

I concur with the majority opinion except for the remand to retry only the damage issue. There are occasions when it may be proper to remand a case to retry only one or two issues. *See* my writing in *Centrol, Inc. v. Morrow,* 489 N.W.2d 890, 898–99 (S.D. 1992) (Wuest, J., dissenting). However, it has been generally stated that where "damages awarded are inseparable, or closely connected with other issues, a partial reversal on the question of damages is not permissible." 5B C.J.S. *Appeal and Error* § 1918 n. 92 (1958). Likewise, when the issues in a case are intertwined, so that an error in one part of the trial may affect the entire result, it is not "in the interest of justice and would be unfair to the parties to retry the case piecemeal." *Kneip v. Unitedbank–Victoria,* 734 S.W.2d 130, 137 (Tex.App.1987). I believe

that this is one of those cases that would be difficult to retry on damages alone, as the jury would not have a proper view of the entire case. *See also Prouse v. Ransom,* 117 Idaho 734, 791 P.2d 1313, 1316 (Idaho App. 1989) (stating that when "the precise effect of the error is difficult to quantify" and that the jury's perception "might well have affected the award," the entire judgment must be vacated); *Roberts v. Mullen,* 446 S.W.2d 86, 89 (Tex.Civ.App.1969) (noting the Texas Supreme Court's holding that "issues of liability and damages in tort cases are indivisible and it is improper to reverse a judgment and remand the case for trial on the issue of damages only"). It is my opinion that in this case, it would be better for a jury to hear the entire evidence before attempting to make a determination of the proper measure of damages. I would remand for a new trial on all the issues.

HENDERSON, Justice (dissenting).

A fair jury trial was held and a verdict was entered for the Liens and against McGladrey & Pullen. McGladrey filed a Motion for Judgment NOV or, alternatively, a new trial, which motion was denied. Full proceedings were had at the trial court level.

It is the function of the jury to determine credibility of witnesses. *Mash v. Cutler,* 488 N.W.2d 642 (S.D.1992). A jury is entitled to accept the version of facts as testified to by one of the parties and reject the other side's testimony. *Farmers State Bank v. Westrum,* 341 N.W.2d 631 (S.D.1983). This Court should not seek reasons to reverse. *Lytle v. Morgan,* 270 N.W.2d 359 (S.D.1978). These are not platitudes; they are sound and time-honored appellate rules of review observed by this Court for decades. As the reviewing court, we are required to view evidence and all reasonable inferences therefrom in a light most favorable to the verdict winner. *Al-*

---

5. Jury Instruction No. 3 provided:

   I have not intended by anything I have said or done, or by any questions that I may have asked, or by any ruling I may have made, to intimate or suggest what you should find to be the facts, or that I believe or disbelieve any witness.

   If anything I have done or said has seemed to so indicate, you will disregard it and form your own conclusion.

   It appears Jury Instruction No. 3 was included by Judge Fitzgerald sua sponte. According to Judge Fitzgerald, Jury Instruction No. 3 is "pretty standard" and "one that I am just going to have constantly engraved up here for me." There were no objections to this instruction.

*berts v. Mutual Serv. Cas. Ins. Co.,* 80 S.D. 303, 123 N.W.2d 96 (1963).

There is no injustice in the result of this case. Therefore, I cannot vote for the conference opinion which reverses the proceedings and judgment entered by the trial court, based upon the jury's verdict.

There was an extensive trial. Note that the tendered majority opinion confines and distills the facts to two short paragraphs. This is, essentially, faulty for it fails to adequately address the scenario upon which the jury acted. Without the facts addressed properly, the issues cannot be dissected and applied to settled law. Infused in some of the issues are a smattering of facts, all skewed to a conclusion of reversal.

In the end, *the tendered majority writing affirms all—but the damages.* Bottomed on the exclusion of evidence by the trial court (the abuse of discretion test), the tendered writing reverses the damage award. Nowhere in said writing is it expressed that Judge Fitzgerald abused his discretion. Majority opinion argues that McGladrey was denied the opportunity to present evidence on "appropriate credit" from 1985 based upon sustained objections concerning a "constructive dividend problem in 1982." McGladrey also fails to cite in his brief where such restrictions occurred during trial. He has failed to make the record, thus no error has been shown. *See Farm Credit Bank of St. Paul v. Brakke,* 483 N.W.2d 167 (N.D.1992).

Liens' expert testified to damages in the amount of $95,392.00. Further, the expert described *how* he arrived at his conclusion. No objection was made. McGladrey did not properly protect the record. *Weaver v. Boortz,* 301 N.W.2d 673 (S.D.1981). McGladrey's counsel argued before the jury that

Liens' taxes could have been avoided and described (plus explained) McGladrey's witnesses' testimony. Jury chose not to accept appellant's version. Rather, the jury accepted Liens' testimony and exhibits. The computation of the verdict award is within the sound discretion of the jury as triers of fact. *Kent v. Allied Oil & Supply, Inc.,* 264 N.W.2d 512 (S.D.1978).

Supposedly, a reversal is based upon a preclusion of cross-examination of Liens' witness. True, cross-examination should not be precluded. However, we do not have such a shortcoming before us. Rather, an offer of proof was spread on the record but was denied by the trial court. When the trial court denied the offer of proof, the trial court called to the attention of counsel that his ruling was based upon the fact that he and the jury listened to such testimony previously in the trial when there was no strenuous objection (*see* trial transcript at 312). Furthermore, concerning the same subject, McGladrey's counsel *was* permitted to cross-examine a witness of Liens concerning the same matters pertaining to the offer of proof.

In short, McGladrey failed to protect the record and should not be heard to set aside this verdict. *Smolnikar v. Robinson,* 479 N.W.2d 516, 518–19 (S.D.1992).

The vitality of this jury verdict has been purloined by appellate decision and has destroyed the jury's calling. Therefore, I respectfully dissent.