Corrected Opinion Filed 9/10/24 by Clerk of the Supreme Court

Substitute Opinion Cover Page, Page 1, Paragraph 5, Page 2, Paragraphs 7 and 8, Page 6, Paragraphs 20 and 21, Page 11, Paragraph 39, and Page 13, Paragraph 45 filed 7/03/24

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 113

| | |
|---|---|
| Mary Roth, | Plaintiff, Appellee, and Cross-Appellant |
| and | |
| Aric Roth, | Plaintiff and Appellee |
| v. | |
| Gary Meyer; Marty Meyer, individually, and as Co-Trustee of the Jean L. Ehrmantrout Residuary Trust; Medora Meyer; Carlos Meyer, individually and as Co-Trustee of the Jean L. Ehrmantrout Residuary Trust; Jewel Meyer; Chet Meyer, individual, as Personal Representative of the Estate of Anthony Ehrmantrout and the Estate of Jean Ehrmantrout, and as Co-Trustee of the Jean L. Ehrmantrout Residuary Trust; and Debbie Meyer, | Defendants, Appellants, and Cross-Appellees |

## No. 20230310

Appeal from the District Court of Grant County, South Central Judicial District, the Honorable Daniel J. Borgen, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice.

Jennifer M. Gooss, Beulah, ND, for plaintiff, appellee and cross-appellant Mary Roth and plaintiff and appellee Aric Roth.

Elizabeth A. Elsberry (argued) and Christopher E. Rausch (appeared), Bismarck, ND, for defendants, appellants, and cross-appellees.

**Crothers, Justice.**

[¶1]  Gary Meyer and the Meyer family appeal from a district court's findings of fact, conclusions of law, order for judgment, judgment, and amended judgment. We reverse the judgments that the loans are enforceable and reverse the findings, conclusions and judgments and remand with directions that the court quiet title in favor of the true owner, make findings on when conversion occurred, make the finding on the correct value of the converted cattle, and if appropriate make findings on unjust enrichment. These findings must be based on the current record.

[¶2]  Gary Meyer argues the court erred by: (1) not quieting title to the subject property in favor of Gary Meyer and family; (2) including prohibiting defendants from preventing plaintiffs from accessing the subject property; (3) receiving summary exhibits 20, 21 and 23 into evidence without admissible supporting evidence; (4) denying his N.D.R.Civ.P. 52(c) motion for judgment on partial findings; (5) finding Gary Meyer converted 13 cattle and valuing the cattle at $2,100 per head; and (6) finding he breached oral loan agreements with Mary Roth and awarding her damages.

[¶3]  Mary Roth cross-appeals arguing that the district court correctly found Gary Meyer breached his contract by failing to pay back loans, but erred by not awarding the total amount of all loans. Mary Roth agrees the court properly found Gary Meyer converted some of her cattle, but contends the court erred in limiting the conversion to 13 head.

I

[¶4]  Gary Meyer is a rancher and has raised cattle since 1962. He married Dolores Meyer and the couple had three children, Chet, Carlos and Marty Meyer. Dolores Meyer died in 1999.

[¶5]  Gary Meyer and Mary Roth began dating in the early 2000's. The couple resided in Elgin, North Dakota, after a fire burned down Gary Meyer's

1

residence on the subject property, which consists of ten acres in section 13, township 133, range 89 west. The couple cohabitated from 2002 until 2022 when their relationship ended. The couple never married but shared a bank account and together ran an intermingled cattle herd.

[¶6]   On September 1, 1994, Anthony and Jean Ehrmantrout conveyed the subject property to each other, making themselves tenants in common. The same day, the Ehrmantrouts made wills giving specified property to each of their grandchildren, Chet, Carlos and Marty Meyer. The subject property was not included in the grandchildren's devisements. The wills provide that any farm property not specifically devised is bequeathed to Dolores Meyer. The Ehrmantrouts' wills stated any property in the residual clause was to be moved into a trust for ultimate conveyance to the trustee, either the surviving Ehrmantrout or Dolores Meyer.

[¶7]   Dolores Meyer died in 1999. The Ehrmantrouts died in 2001. In November 2001, Chet Meyer, as Jean Ehrmantrout's personal representative, distributed the decedent's remainder interest from her estate to Chet, Carlos and Marty Meyers as co-trustees of the Jean Ehrmantrout Residuary Trust. The deed of distribution specifically excluded the subject property. In December 2001, Chet, Carlos and Marty Meyer as co-trustees of the Jean Ehrmantrout Residuary Trust gave a warranty deed for what the deed described as a remainder interest in section 13 to Chet, Carlos and Marty Meyer. This transfer excluded the subject property.

[¶8]   On May 7, 2004, Marty Meyer conveyed his interest in section 13 to Gary Meyer via a quit claim deed. As of May 7, 2004, ownership of section 13 was split between the trust that owned the subject property, Gary, Chet and Carlos Meyer who each owned a one-third interest in the remainder of section 13. Gary Meyer paid taxes on all of section 13 from 2004 to 2009. Gary Meyer testified he lived on the subject property since 1962 and thought he owned it until 2019. He testified that he mortgaged the subject property but the record contains no further evidence about any mortgages. On April 12, 2010, Gary Meyer conveyed his interest in the subject property to Mary Roth via a quit claim deed. Mary Roth paid the land taxes on the subject property from 2010 to 2021.

2

[¶9]   On Gary Meyer's ranch, the cattle are registered under several identities including his name alone, Meyer Ranch, Gary and Dolores Meyer, or Gary and Mary Meyer. His herd currently is about 60 head, but ran 100 head five years ago.

[¶10] Gary Meyer and Mary Roth intermingled their cattle and did not have a formal agreement for the cattle operation. All the cattle in Gary Meyer's operation were identified by a tattoo in the animal's ear, including Mary Roth's cattle. The tattoo identifies the animal with the year it was born and in the numerical order it was born. The letter at the end of the number helps separate cattle born ten years apart. Between 2003 and 2008, Mary Roth purchased several heifers and bred heifers bearing the identifications 339N, 311N, 374N, 373N, 476P, 521R, 532R, 595R, 602S, 625S, 644S, 714T, 725T, 729T, 731T, 732T, 733T, 734T, 736T, 742T, 711T, and 722T. Aric Roth, Mary Roth's son, purchased heifer 804U during this period as well. A heifer is a young female cow that has never been bred, and a bred heifer is a pregnant heifer.

[¶11] Some of Mary Roth's cattle were sold under the Meyer Ranch name. Gary Meyer testified he would give Mary Roth an envelope with cash from the sale of her cattle. Mary Roth testified she never relinquished her ownership right in the cattle that were not sold.

[¶12] Gary Meyer received checks from Mary Roth, which both testified were loans. Gary Meyer was to repay Mary Roth when he could. Mary Roth testified that she wrote eight checks to Gary Meyer between 2007 and 2009. Only two checks, dated August 15, 2007, and April 26, 2009, had "loan" written in the memo. The 2007 check was for $2,500 and the 2009 check was for $50,000. Gary Meyer testified that he paid Mary Roth $5,000 in cash once, but could not remember the date or the reason for the money. Gary Meyer testified that he did not specifically remember repaying the loans.

[¶13] In June 2023, the district court held a two-day bench trial. During her testimony, Mary Roth offered cattle production notebooks into evidence. The notebooks had 2013 scribbled out and 2016 written in its place. The notations did not match the document that Gary Meyer received from Mary Roth during

3

discovery. The court sustained Gary Meyer's objection to the exhibit because it did not match the document exchanged during discovery. According to Aric Roth, he used these notebooks in part to create his cattle spreadsheet, which was an exhibit Mary Roth claimed showed the several hundred converted cattle. At the end of Mary Roth's case, Gary Meyer moved for judgment on partial findings, which the court denied under N.D.R.Civ.P. 52(c).

[¶14] After the close of evidence, the district court found Gary Meyer held title to the subject property, gained through adverse possession. The court found this because Gary Meyer operated a ranch on the premises since 1962, he lived on the subject property, and thought he owned it until 2019. The court found it significant that Gary Meyer testified he mortgaged the property and paid the land taxes for several years. The court also found that Gary Meyer's actions were visible, actual, notorious, distinct, hostile, and that he held the property continuously from 1962 until 2010 when he conveyed the property to Mary Roth. The court found Gary Meyer had title when he gave the quit claim deed to Mary Roth. The court found Mary Roth has good title and quieted title in her favor. The court reasoned that since it quieted title in favor of Mary Roth, it did not need to make findings on unjust enrichment because the claim was pleaded in the alternative.

[¶15] The district court also found $52,500 worth of oral loans existed between Mary Roth and Gary Meyer and the parties agreed to the terms of paying the money back when Gary Meyer could. The court found that it would be an "injustice" to allow Gary Meyer to retain the benefit of the loans and ordered him to pay Mary Roth $52,500.

[¶16] The district court found Gary Meyer converted 13 head of cattle belonging to Mary Roth. The court did not find when the alleged conversion began. The court also found that Mary Roth did not specifically identify any converted cattle other than Gary Meyer testifying that it was "credible" that Mary Roth had 13 head in his herd. Thus, the court found Mary Roth was owed $2,100 per head for the 13 converted cattle. This amount was the sum of the cattle sales from the cattle catalogs each year, averaged per year, and then

averaged with other sale years. Gary Meyer timely appealed. Mary Roth timely cross-appealed.

## II

[¶17] Gary Meyer argues the district court erred when it did not quiet title to the subject property in Gary Meyer or his family. He argues the court erred when it found Gary Meyer owned the property by adverse possession and held title to it until he transferred it to Mary Roth in 2010. Before considering the quiet title action, we first must decide if the district court correctly found adverse possession.

[¶18] "In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable." *Gimbel v. Magrum*, 2020 ND 181, ¶ 5, 947 N.W.2d 891. "A finding is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction a mistake has been made." *Hunter v. State*, 2020 ND 224, ¶ 11, 949 N.W.2d 841. "In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations." *Gimbel*, at ¶ 5.

[¶19] "To satisfy the elements for adverse possession, the acts on which the claimant relies must be actual, visible, continuous, notorious, distinct, and hostile, and of such character to unmistakably indicate an assertion of claim of exclusive ownership by the occupant." *Gimbel*, 2020 ND 181, ¶ 7. For the continuous element, "N.D.C.C. § 28-01-07 provides a presumption against the adverse possession of real property 'unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action.'" *Larson v. Tonneson*, 2019 ND 230, ¶ 12, 933 N.W.2d 84. A party who adversely possesses with or without a written instrument must hold the land continuously for 20 years. N.D.C.C §§ 28-01-07 and 28-01-08. For the requirements of adverse possession to be met, "the true owner must be removed from possession and kept out for the statutory period by an open, visible, and exclusive possession of the claimant without license or

5

consent of the owner." 16 Richard R. Powell, *Powell on Real Property*, § 91.02 (2023).

[¶20]  On September 1, 1994, Anthony and Jean Ehrmantrout transferred the subject property to each other. In 2001, Anthony and Jean Ehrmantrout died. The estate held all of section 13 until November 2001 when Chet Meyer, as personal representative, distributed the estate to Chet, Carlos and Marty Meyer as co-trustees of the Jean Ehrmantrout Residuary Trust. In December, 2001, Marty, Carlos and Chet Meyer as co-trustees of the Jean Ehrmantrout Residuary Trust delivered themselves a warranty deed for section 13, excluding the subject property. In 2004, Marty Meyer gave Gary Meyer his interest in section 13.

[¶21] The district court did not make findings on whether the Ehrmantrouts occupied the subject property after the September 1994 grant. Nor did it make a finding on whether the Ehrmantrouts and the Meyers had an agreement allowing the Meyers to remain on the property after the September 1994 grant, or if the Meyers remained on the subject property hostile to or in defiance of Ehrmantrouts' ownership arising from the September 1994 grant.

[¶22] We reverse and remand for the district court to find who was in possession of the subject property during the relevant periods and whether that possession was adverse to the owner for the requisite amount of time. Next, the court must find who the true owner is, to quiet title in their favor, and if necessary, to make findings on unjust enrichment. The court's findings must be made based on the evidence admitted at trial.

III

[¶23]  Gary Meyer argues the district court erred in receiving exhibits 20, 21 and 23 into evidence. Those exhibits are summaries of cattle lineage and he claims the supporting documents were inadmissible, making the summaries inadmissible.

6

[¶24] This Court reviews a "district court's decision on the admissibility of evidence under the abuse-of-discretion standard." *Titan Mach., Inc. v. Patterson Enter., Inc.*, 2016 ND 19, ¶ 8, 874 N.W.2d 317. "A district court abuses its discretion when its decision is arbitrary, capricious, or unreasonable, is a misapplication or misinterpretation of the law or is not the product of a rational mental process leading to a reasoned decision." *Id.*

[¶25] A party may use a "summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." N.D.R.Ev. 1006. "Rule 1006 does not permit the admissibility of summaries where the individual writings are themselves inadmissible," *id.*, explanatory note, yet the supporting documents "need not actually be admitted into evidence." *Titan Mach., Inc.*, 2016 ND 19, ¶ 11. Rule 1006's role is to safeguard against inaccuracies. *Id.* "Any small deficiencies in the accuracy of the summary go to the weight, not admissibility." *Id.* However, proper foundation is needed for the "correctness of the exhibit" and "authenticating the writings, recordings, or photographs forming the basis of the summary." Michael H. Graham, *8 Handbook of Fed. Evid.* § 1006:1 (9th ed. 2023).

[¶26] Aric Roth created exhibits 20, 21 and 23. Aric Roth testified he created these exhibits utilizing data from cattle catalogues, bidder number information, cattle invoices, herd performance summaries, the American Simmental Association website, and cattle history notebooks. Mary Roth offered the cattle history notebooks into evidence, but the district court, sustained Gary Meyer's authenticity objection because of a discrepancy between dates on the original and the copies provided to Gary Meyer during discovery. Gary Meyer did not have access to an unaltered version of the cattle history notebooks. Aric Roth testified he could not identify what information came from the notebooks. Yet, the court admitted exhibits 20 and 21. Exhibit 23 was offered but never received into evidence per the transcript, even though the court recorder indicated it was admitted.

[¶27] The standard for summary exhibits is that the supporting documents must be admissible, but do not need to be admitted. *Titan Mach., Inc.*, 2016

7

ND 19, ¶ 11; N.D.R.Ev. 1006, explanatory note. Here, the district court did not admit the cattle notebooks because of a lack of foundation and concerns over authenticity Gary Meyer objected to admission of exhibits 20, 21 and 23 because the cattle notebooks were not admitted, and because of lack of foundation. Proper foundation is needed for authentication of documents used in creating the summary. *8 Handbook of Fed. Evid.* § 1006:1 (9th ed. 2023). Exclusion of the notebooks due to inadequate authentication makes exhibits 20, 21 and 23 not admissible. Because these exhibits utilized information from documents rejected by the court for lack of adequate foundation, the court misapplied the law by admitting the summaries because documents used in their creation were not admissible. *Id.* We reverse the court's calculation of damages that relied on information and testimony derived from exhibits 20, 21 and 23.

## IV

[¶28] Gary Meyer alleges the district court erred in finding he converted 13 cattle belonging to Mary Roth. Mary Roth cross-appeals arguing the court properly found that Gary Meyer converted her cattle but erred in limiting the finding to 13 head.

[¶29] "Conversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner." *Buri v. Ramsey*, 2005 ND 65, ¶ 14, 693 N.W.2d 619. Whether a conversion has been committed is a finding of fact reviewed under a clearly erroneous standard. *Id.* at ¶ 13. "A finding is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction a mistake has been made." *Hunter*, 2020 ND 224, ¶ 11.

[¶30] For a party to prove conversion of intermingled cattle, "identification must be made with reasonable certainty." *Napoleon Livestock Auction, Inc. v. Rohrich*, 406 N.W.2d 346, 352 (N.D. 1987). "The plaintiff must recover on the strength of his own title, without regard to the weakness of that of his adversary, and he must show that he has either a general or special property

8

interest in the thing converted." *Id.* at 352-53. The party must have a "right to its possession at the time of the alleged conversion." *Id.* at 353. "An action for taking, detaining, or injuring any goods or chattels, including actions for the specific recovery of personal property" must be commenced within six years after the claim for relief accrued. N.D.C.C. § 28-01-16(4).

[¶31] In *Rohrich*, 700 calves were allegedly converted by Rohrich from the Napoleon Livestock Auction. 406 N.W.2d at 348-49. The sales barn did not brand or record the cattle. *Id.* at 354. The sales barn did not direct Rohrich to keep the calves separate. *Id.* The calves were intermingled and unable to be identified. *Id.* at 355. By contrast, Mary Roth's cattle were identified by their ear tattoo. Effectively, the tattoo is the cow's serial number and could identify the cattle.

[¶32] The district court found Mary Roth did not specifically identify any converted cattle. Under *Rohrich*, identification must be made with reasonable certainty. 406 N.W.2d at 352. The cattle in question all had ear tattoos, which could be traced and are more permanent identification than tags. Gary Meyer re-used the initial number every ten years because the first number relates to the year a calf was born and the second number is the sequence in which it was born within the herd. The letter adds another layer to prevent mistaken cattle identity with cattle born ten years apart. The evidence of ear tattoos gave the court a means by which Mary Roth's cattle could be identified with reasonable certainty. Mary Roth also provided the court with ear tag identification for the cattle she alleged Gary Meyer converted through evidence of the cattle catalogues, herd handler, bidder number information, cattle invoices, herd performance summaries and the American Simmental Association website. Mary Roth's cattle and their lineage could be traced through these documents. The court clearly erred in finding Mary Roth failed to specifically identify cattle she claimed were converted.

[¶33] Gary Meyer alleges the district court erred in determining that he converted 13 cattle belonging to Mary Roth. In the district court's order, the court failed to identify when the cattle were converted, which is key to determine conversion and proper remedies. Gary Meyer claims recovery for

9

any converted cattle are barred by the statute of limitations. To discern how many, if any, cattle were converted, one must determine when conversion occurred. "A cause of action for conversion ordinarily accrues at, and the statute of limitations begin to run from, the date of the conversion." 54 C.J.S. *Limitations of Actions* § 253 (2024). At Mary Roth's urging, the court found the conversion claims arose when each cow was born, thereby incorrectly limiting the claim to cattle born within six years of 2022.

[¶34] A claim of conversion has a statute of limitations of six years from the date of the conversion. N.D.C.C. § 28-01-16. Gary Meyer directed the district court to the correct law. The statute of limitations runs forward from the date of conversion, not backwards. 54 C.J.S. *Limitations of Actions* § 253 (2024). This lawsuit was commenced on June 22, 2022. Thus, any cattle converted before June 22, 2016, are beyond the statute of limitations. The court erred by focusing on the birth date instead of finding when specific cattle were converted by Gary Meyer. The court must determine when conversion occurred and if the date was before or after June 22, 2016. N.D.C.C. § 28-01-16; 54 C.J.S. *Limitations of Actions* § 253 (2024).

[¶35] The district court's lack of findings over the date or dates when Gary Meyer committed conversion leaves this Court unable to determine whether Mary Roth was granted recovery for claims outside the statute of limitations period. We reverse and remand for the district court to identify the specific cattle converted, find when the conversion(s) occurred, and determine if the statute of limitations had run since conversion occurred. The court's findings must be made based on the evidence admitted at trial, excluding exhibits 20, 21 and 23.

V

[¶36] Gary Meyer contends the district court erred in valuing the alleged converted cattle at $2,100 per head.

[¶37] "The appropriate standard of review in an appeal challenging a trial court's award of damages in a bench trial is whether the trial court's findings of fact on damages are clearly erroneous." *Buri*, 2005 ND 65, ¶ 17. "A finding

10

is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction a mistake has been made." *Hunter*, 2020 ND 224, ¶ 11.

[¶38] The damages for conversion are either:

> "1. The value of the property at the time of the conversion, with the interest from that time; or
> 2. When the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and
> 3. A fair compensation for the time and money properly expended in pursuit of the property."

N.D.C.C. § 32-03-23. Damages in conversion must be based on market value unless a market does not exist for the converted property. *Company A, First Regiment, North Dakota Nat'l Guard Training Sch. v. Hughes*, 205 N.W. 722, 727 (N.D. 1925). The losses a person can recover on a conversion claim must be the "actual losses suffered." *Buri*, 2005 ND 65, ¶ 22; *see also Frank v. Schaff*, 123 N.W.2d 827, 830 (N.D. 1963) ("Actual damages, however, can be awarded only for actual losses suffered by the plaintiff.").

[¶39] Here, the district court requested post-trial briefing on what the parties believed was the value of the alleged converted cattle. Mary Roth claimed the cattle were worth $2,100 per head. Gary Meyer argued the cattle were worth little to nothing and Mary Roth was entitled to no more than nominal damages. The court chose $2,100 per head by considering the sum of cattle sales, average of the yearly sales, and then an average of all the years.

[¶40] The district court misapplied the law and clearly erred in finding the value of the converted cattle. Under *Buri, Frank* and *Hughes*, a plaintiff may recover losses if there is a market for the converted property, but cannot be awarded both the value of the property and value of the loss of possession. *Buri*, 2005 ND 65, ¶¶ 24-25; *Hughes*, 205 N.W. at 727; *Frank*, 123 N.W.2d at 830. The award of $2,100 per head does not represent Mary Roth's actual damages.

11

Mary Roth's actual damages must be either the value of the cattle at the time they were converted, with interest, or the "highest market value of the property at any time between the conversion and verdict, without interest," plus fair compensation to recover the property. N.D.C.C. § 32-03-23. The court's $2,100 per head finding was induced by an erroneous view of the law and evidence does not exist to support the findings. We reverse and remand for the district court to make findings on Mary Roth's actual damages for any cattle the court finds Gary Meyer converted. The court's findings must be made based on the evidence admitted at trial, excluding exhibits 20, 21 and 23.

## VI

[¶41] Gary Meyer argues the district court erred in finding he and Mary Roth entered oral contracts for loans from Mary Roth, he breached the oral contracts, and he owes her damages. He argues the time for performance was not reasonable and the aggregate amount of the loans exceeded $25,000, thereby barring enforcement under the statute of frauds. Mary Roth cross-appeals arguing the court correctly found Gary Meyer breached the contract, but erred by not awarding the full amount of the loans she made. She argues the loans are outside the statute of frauds because Gary Meyer received a direct personal benefit and failed to raise the affirmative defense.

[¶42] "The existence of an oral contract is a question of fact," which is "reviewed under the clearly erroneous standard." *In re Estate of Thompson*, 2008 ND 144, ¶ 10, 752 N.W.2d 624. "A finding is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction a mistake has been made." *Hunter*, 2020 ND 224, ¶ 11.

[¶43] Oral contracts that, in aggregate, loan over $25,000 must be in writing, and if not, are unenforceable under the statute of frauds. N.D.C.C. § 9-06-04(4). "A writing 'must contain all the essential or material conditions and terms of the contract,'" which includes "the identity of the parties, the subject matter of the agreement, and express consideration." *Trosen v. Trosen*, 2014 ND 7, ¶ 12, 841 N.W.2d 687. "To satisfy the statue of frauds, the essential terms of the

12

agreement must be in writing, and the contract cannot rest partly in writing and partly in parol." *Id.* at ¶ 14.

[¶44] Gary Meyer raised the statute of frauds defense in his amended answer. The district court found Gary Meyer and Mary Roth entered two loans. One loan was for $50,000, dated April 26, 2009, and the other for $2,500, dated August 15, 2007. The court found the agreements were made orally, and included that Gary Meyer would pay Mary Roth when he could. Loans in aggregate greater than $25,000 must be in writing. N.D.C.C. § 9-06-04(4). Here, the only writing was the carbon copy of the checks that said "loan" and the amount.

[¶45] The copies of the checks identify the parties and the amount of the loan. Because Mary Roth's loans are in aggregate greater than $25,000 the statute of frauds applies and the loans are unenforceable against Gary Meyer. *See First State Bank of Goodrich v. Oster*, 500 N.W.2d 593, 594-95 (N.D. 1993) (holding oral agreement for three loans due 18 months apart were in aggregate greater than $25,000 and unenforceable under N.D.C.C. § 9-06-04(4)). We reverse because the district court erred when it did not apply the statute of frauds and when it found Gary Meyer was required to pay $52,500 for breaching the contracts with Mary Roth. The issues over loans may be a basis for recovery if the court finds Gary Meyer was unjustly enriched. If so, the court's findings on that issue must be made based on the evidence admitted at trial.

VII

[¶46] The district court erred in finding Gary Meyer held the subject property by prescription via adverse possession. The court abused its discretion in admitting exhibits 20 and 21 and relying on exhibit 23. The court erred when it failed to find when conversion began and whether Gary Meyer converted Mary Roth's cattle within the statute of limitations period. The court also erred when it valued the converted cattle at the average of $2,100 per head as an estimation. The court erred when it found Gary Meyer owed on loan contracts, the enforcement of which was barred by the statute of frauds. We have considered all other arguments Gary Meyer and Mary Roth raised and

13

concluded they either lack merit or are unnecessary to our decision. We reverse the findings, conclusions and judgments and remand to the district court to make the directed findings based on the current record.

[¶47] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Douglas A. Bahr