**Substitute Opinion Pages 1-19 filed 07-31-2025**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 116

Mary Roth and Aric Roth,                                   Plaintiffs and Appellees

      v.

Gary Meyer; Marty Meyer, individually, and
as Co-Trustee of the Jean L. Ehrmantrout
Residuary Trust; Medora Meyer; Carlos Meyer,
individually and as Co-Trustee of the Jean L.
Ehrmantrout Residuary Trust; Jewel Meyer;
Chet Meyer, individually, as Personal
Representative of the Estate of Anthony
Ehrmantrout and the Estate of Jean
Ehrmantrout, and as Co-Trustee of the Jean L.
Ehrmantrout Residuary Trust, and Debbie
Meyer,                                                     Defendants and Appellants

### No. 20240324

Appeal from the District Court of Grant County, South Central Judicial District,
the Honorable Daniel J. Borgen, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Justices
McEvers and Bahr joined. Justice Crothers filed a separate opinion concurring
and dissenting.

Jennifer M. Gooss, Hazen, N.D., for plaintiffs and appellees.

Christopher E. Rausch (argued) and Elizabeth A. Elsberry (on brief), Bismarck,
N.D., for defendants and appellants.

**Tufte, Justice.**

[¶1]   The Meyer family members and related trustees (collectively the Meyers) appeal from the district court's order on remand and second amended judgment. The Meyers argue the district court erred by (1) quieting title in the Roths because the issue was not properly before the district court or, alternatively, because it clearly erred in finding adverse possession; (2) including additional terms and conditions regarding access to the property; and (3) ordering Gary Meyer to pay Mary Roth restitution for unjust enrichment. We affirm the second amended judgment in part and reverse in part. We remand for further proceedings consistent with this opinion.

I

[¶2]   In *Roth v. Meyer,* 2024 ND 113, 9 N.W.3d 469, we affirmed in part, reversed in part, and remanded for further proceedings.

[¶3]   Gary Meyer is a rancher and has raised cattle since 1962. He married Dolores (Ehrmantrout) Meyer and the couple had three children, Chet, Carlos, and Marty Meyer. Dolores Meyer died in 1999.

[¶4]   Gary Meyer and Mary Roth began dating in the early 2000s. The couple resided in Elgin, North Dakota, after a fire destroyed Gary Meyer's residence on the subject property. The 10-acre subject property comprises the SW1/4 SW1/4 NE1/4 of section 13-133-89 in Grant County, which is an interior parcel within section 13. The couple built a home on the subject property where they cohabitated from 2002 until 2022, when their relationship ended. The couple never married but shared a bank account and ran an intermingled cattle operation.

[¶5]   On September 1, 1994, Anthony and Jean Ehrmantrout conveyed the property to each other as tenants in common. The same day, the Ehrmantrouts

1

made wills leaving specified property to the trustee of a trust created under the will for distribution upon the death of the survivor to each of their grandchildren, Chet, Carlos, and Marty Meyer. The wills did not specifically provide for the subject property. The wills contained a clause leaving the residue, including the subject property, to "the Trustee of Trust B."

[¶6] The Ehrmantrouts died in 2001. In November 2001, Chet Meyer, as Jean Ehrmantrout's personal representative, distributed her estate to himself, Carlos Meyer, and Marty Meyer as Co-Trustees of the Jean L. Ehrmantrout Residuary Trust (Trust B) Dated 9/1/94. The deed of distribution specifically excluded the subject property. In December 2001, Chet, Carlos, and Marty Meyer, Co-Trustees of the Jean L. Ehrmantrout Residuary Trust (Trust B) Dated 9/1/94 conveyed section 13, less the subject property, to Chet, Carlos, and Marty Meyer.

[¶7] In May 2004, Marty Meyer conveyed his interest in section 13 to Gary Meyer via quitclaim deed. As of May 2004, the trust owned the subject property. Gary Meyer paid taxes on the subject property from 2004 to 2009. Gary Meyer testified he had lived on the subject property since 1962 and believed he owned the property. He testified he mortgaged the subject property, but a mortgage on the subject property was not received into evidence. On April 12, 2010, Gary Meyer conveyed his interest in the subject property to Mary Roth via quitclaim deed, and she paid the real estate taxes from 2010 to 2021. The district court originally found Gary Meyer held title to the subject property, gained through adverse possession, at the time he conveyed his interest to Mary Roth. *See Roth*, 2024 ND 113, ¶ 14.

[¶8] In July 2024, this Court remanded the case to the district court to make further findings on adverse possession. *Roth*, 2024 ND 113, ¶ 46. In October 2024, the district court issued its order on remand, finding Gary Meyer owned the subject property through adverse possession in 2010 at the time he quitclaimed the property to Mary Roth. As a result, the court concluded Mary Roth had good title in 2016 to quitclaim the property to her son, Aric Roth, reserving a life estate. The court quieted title in Aric Roth and Mary Roth.

2

[¶9]   During their time together, Gary Meyer received checks from Mary Roth, which both testified were loans. Gary Meyer was to pay Mary Roth back when he could. Mary Roth testified she wrote eight checks to Gary Meyer between 2007 and 2009. Only two checks had "loan" written in the memo, and they were dated August 15, 2007, and April 26, 2009. The 2007 check was for $2,500 and the 2009 check was for $50,000. Gary Meyer testified he gave Mary Roth $5,000 in cash once, but could not remember the date or the reason for the payment. He testified that after each cattle sale he would give Mary Roth an envelope with cash for the sale of her cattle. Gary Meyer testified that he did not specifically remember repaying her loans to him. In *Roth*, we reversed the district court's conclusion that Gary Meyer owed Mary Roth $52,500 on oral loan contracts, because enforcement was barred by the statute of frauds, and remanded for consideration of the related unjust enrichment claim. On remand, the district court found Gary Meyer was unjustly enriched by the unpaid loans and ordered him to pay her $52,500.

[¶10] The Meyers appeal from the second amended judgment, arguing the district court erred by quieting title in the Roths, including additional terms and conditions regarding access to the property, and ordering Gary Meyer to pay Mary Roth restitution for unjust enrichment.

## II

[¶11] The Meyers argue the district court erred in quieting title in the Roths instead of the Meyer trustees. The Meyers argue the district court erred in considering the issue of adverse possession as part of its quiet title findings because that issue was not properly before the court on remand. Alternatively, the Meyers argue the district court clearly erred in finding Gary Meyer had title to the subject property by adverse possession when he quitclaimed it to Mary Roth in 2010.

[¶12] On remand, the district court must follow directions from this Court. "The mandate rule, a more specific application of law of the case, requires the trial

3

court to follow pronouncements of an appellate court on legal issues in subsequent proceedings of the case and to carry the appellate court's mandate into effect according to its terms." *Walstad v. Walstad*, 2013 ND 176, ¶ 9, 837 N.W.2d 911. We retain authority to decide whether the court fully carried out our mandate's terms. *Id.*

[¶13] The Meyers argued during their first appeal that the district court erroneously considered adverse possession as part of its quiet title analysis. *Roth*, 2024 ND 113, ¶ 17. We reversed and remanded "for the district court to find who was in possession of the subject property during the relevant periods and whether that possession was adverse to the owner for the requisite amount of time." *Id.* ¶ 22. Our instructions required findings by the court on the evidence in the record without further evidentiary proceedings. *Id.* ¶ 1. The district court properly considered the issue as we directed because our remand included requirements for factfinding on adverse possession.

[¶14] The Meyers also argue the district court clearly erred in finding Gary Meyer had title to the subject property by adverse possession when he quitclaimed it to Mary Roth in 2010. This Court reviews factual determinations in appeals from quiet title judgments under the clearly erroneous standard. *Great Plains Royalty Corp. v. Earl Schwartz Co.*, 2022 ND 156, ¶ 13, 978 N.W.2d 715. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made." *Id.* (cleaned up). "The burden of proving adverse possession rests with the person alleging it and must be established by clear and convincing evidence." *Torgerson v. Rose*, 339 N.W.2d 79, 84 (N.D. 1983). When a finding requires proof by clear and convincing evidence in the trial court, our review on appeal applies the clearly erroneous standard under N.D.R.Civ.P. 52(a) in the context of the required standard of proof. *Fitzgerald v. Balkowitsch*, 288 N.W.2d 761, 763 n.3 (N.D. 1980) (citing *Zundel v. Zundel*, 278 N.W.2d 123, 130 (N.D. 1979) (discussing application of clear error review to findings requiring clear and convincing evidence)); *see also Interest of*

4

*Sternberg*, 2023 ND 40, ¶ 7, 987 N.W.2d 340 (referring to "modified clearly erroneous standard" under which "[w]e will affirm a district court's decision 'unless it is induced by an erroneous view of the law or we are firmly convinced the decision is not supported by clear and convincing evidence'"); *Interest of B.A.C.*, 2017 ND 247, ¶ 12, 902 N.W.2d 767 (referring to a "more probing" clearly erroneous standard under which we "will affirm an order for involuntary treatment unless it is induced by an erroneous view of the law or if we are firmly convinced it is not supported by clear and convincing evidence"); *Estate of Stanton*, 472 N.W.2d 741, 745 (N.D. 1991) (review of summary judgment must consider burden of clear and convincing evidence).

[¶15] We explained the proof requirements for adverse possession in our previous decision in this case:

> To satisfy the elements for adverse possession, the acts on which the claimant relies must be actual, visible, continuous, notorious, distinct, and hostile, and of such character to unmistakably indicate an assertion of claim of exclusive ownership by the occupant. For the continuous element, N.D.C.C. § 28-01-07 provides a presumption against the adverse possession of real property unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action. A party who adversely possesses with or without a written instrument must hold the land continuously for 20 years. N.D.C.C §§ 28-01-07 and 28-01-08. For the requirements of adverse possession to be met, the true owner must be removed from possession and kept out for the statutory period by an open, visible, and exclusive possession of the claimant without license or consent of the owner.

*Roth*, 2024 ND 113, ¶ 19 (cleaned up). "Whether there has been an adverse possession is a question of fact, which will not be reversed on appeal unless it is clearly erroneous." *Moody v. Sundley*, 2015 ND 204, ¶ 11, 868 N.W.2d 491.

[¶16] In reversing the district court, we explained:

5

> The district court did not make findings on whether the Ehrmantrouts occupied the subject property after the September 1994 grant. Nor did it make a finding on whether the Ehrmantrouts and the Meyers had an agreement allowing the Meyers to remain on the property after the September 1994 grant, or if the Meyers remained on the subject property hostile to or in defiance of Ehrmantrouts' ownership arising from the September 1994 grant.

*Roth*, 2024 ND 113, ¶ 21. Our remand of the quiet title issue directed the district court "to find who was in possession of the subject property during the relevant periods and whether that possession was adverse to the owner for the requisite amount of time. Next, the court must find who the true owner is, to quiet title in their favor . . . ." *Roth*, 2024 ND 113, ¶ 22.

[¶17] On the question of who was in possession of the subject property during times relevant to this case, the district court focused its findings on "whether the Ehrmantrouts occupied the subject property after the September 1994 grant."

> The testimony the Court received at trial was that Gary had lived or ran cattle on the subject property for over fifty (50) years. During those years, there had been four houses on the property, including the house built by Gary and Mary. The Court received no evidence that the Ehrmantrouts utilized any part of the subject property after the 1994 grant. Rather, the only testimony the Court received pertained to Gary's possession and use of the subject property, exclusively for decades, before and after the 1994 grant.

[¶18] On the question of whether the possessor's occupancy was hostile, the district court first answered "whether the Ehrmantrouts and the Meyers had an agreement allowing the Meyers to remain on the property after the September 1994 grant," finding:

> The next fact the Court has to find is whether the Ehrmantrouts and the Meyers had an agreement allowing the Meyers to remain on the subject property after the September 1994 grant. Black's Law Dictionary defines an "agreement" as "a mutual understanding

6

between two or more persons . . ." *Black's Law Dictionary*, 74 (8th ed. 2004).

Gary was clear in his testimony — he believed he owned the subject property. He justified his belief by explaining: "I've lived there since '62. I assumed I owned it. I had it mortgaged. We got it out of mortgage and we remortgaged it and, yeah, I owned it." *Docket No. 317, pg. 96*. With such a strong stance taken by Gary, that he owned the property outright, enough to place multiple mortgages on it, the Court finds the Ehrmantrouts and Gary could not have had an agreement allowing the Meyers to remain on the property after the 1994 grant. Such agreement would be in direct conflict with Gary's belief that he owned the subject property.

The Court finds through living on the land, running cattle, taking out numerous mortgages, and generally holding himself out as the owner of the subject land, Gary acted hostile and in defiance of Ehrmantrouts' interest in the subject property. Gary's adverse possession of the subject property was continuous from 1996 to 2022. At no time during this time period did Gary act in a way inconsistent with an owner of the property.

[¶19] Under the court's reasoning, if there had been an agreement, then Meyer's possession would not be hostile. The absence of an agreement does not establish hostility. Adverse possession requires possession hostile to the true owner— meaning possession that is inconsistent with the owner's rights and gives notice of adverse claims. Whether Gary's possession was hostile requires examining his conduct and demonstrated intent, not merely the absence of formal permission. As the district court reasoned, Meyer's belief he owned the property is inconsistent with possession of the Ehrmantrout's property by agreement. An agreement is relevant because "[f]or the requirements of adverse possession to be met, 'the true owner must be removed from possession and kept out for the statutory period by an open, visible, and exclusive possession of the claimant *without license or consent of the owner*.'" *Roth*, 2024 ND 113, ¶ 19 (emphasis added) (quoting 16 Richard R. Powell, *Powell on Real Property*, § 91.02 (2023)). Whether an agreement existed is relevant, but the presence or absence of an agreement is

7

not the essential finding. Adverse possession requires possession hostile to the true owner. Put another way, an agreement defeats hostility, but absence of an agreement is not sufficient to show hostility.

[¶20] The district court's finding on hostility relied on Gary Meyer's belief that he owned the property. We agree his belief demonstrates a lack of agreement, but a finding of hostility based solely on the occupant's belief does not itself establish hostility. The court found "through living on the land, running cattle, taking out numerous mortgages, and generally holding himself out as the owner of the subject land, Gary acted hostile and in defiance of Ehrmantrouts' interest in the subject property." These findings on hostility are insufficient.

[¶21] The district court's analysis is constrained by a record not developed with the theory of adverse possession in mind because the court first raised this theory after the close of evidence. Adverse possession was not pleaded by any party or tried during the proceedings. Although both parties brought quiet title claims, neither party alleged adverse possession as the basis for their claims. *Overbo v. Overbo*, 2024 ND 233, ¶ 8, 14 N.W.3d 898 (describing party presentation principle). The Roths based their quiet title claim on chain of title through quitclaim deeds, while the Meyers claimed title through the trust. After the close of evidence, the district court sua sponte suggested that it may grant the Roths' claim as a result of Meyers' adverse possession prior to the 2010 quitclaim deed, despite adverse possession not having been raised in the pleadings or mentioned during trial. This created an incomplete evidentiary record on adverse possession elements because the parties had no opportunity to develop evidence specifically addressing whether Gary's possession was hostile, exclusive, or met other statutory requirements.

[¶22] To support its finding of hostile possession by Gary Meyer, the district court relied on testimony that: (1) Gary had lived on or ran cattle on the subject property for over 50 years; (2) Gary believed he owned the property and had mortgaged the property; (3) the Ehrmantrouts had not used any part of the property after 1994; and (4) Gary possessed and used the property "exclusively."

8

The court did not acknowledge its findings must meet the clear and convincing evidence standard. Beyond the elevated burden of clear and convincing evidence, we require "special rigor" to prove adverse possession against a family member. *Torgerson v. Rose*, 339 N.W.2d 79, 84 (N.D. 1983). The district court did not discuss whether it applied this especially rigorous standard.

[¶23] A quiet title action not founded on a written instrument is limited to "the premises actually occupied and no other." N.D.C.C. § 28-01-10; *Hovet v. Dahl*, 2024 ND 129, ¶ 7, 9 N.W.3d 699. Only land "protected by a substantial enclosure" or "usually cultivated or improved" may be acquired by adverse possession. N.D.C.C. § 28-01-11. The parties did not supply evidence of a substantial enclosure surrounding the subject property. We have said neither mowing nor cutting hay is sufficient to establish the "unmistakably clear" acts of hostile possession required to satisfy the statutory requirements. *Gimbel v. Magrum*, 2020 ND 181, ¶ 7, 947 N.W.2d 891; *Hovet*, 2024 ND 129, ¶ 10.

[¶24] The district court instead relied on Gary Meyer's testimony that he believed he owned the property. Gary Meyer's subjective belief he owned the property is not relevant. Only adverse, open, notorious, unmistakably clear acts of possession are sufficient to communicate to the true owner that his possession is hostile and exclusive. *See Martin v. McDonnold*, 247 S.W.3d 224, 235 (Tex. App. 2006) (affirming summary judgment because "[a] claimant's subjective belief that the property claimed adversely belonged to him, standing alone, fails to raise a fact issue"); *Teel v. Stading*, 155 Wash. App. 390, 396, 228 P.3d 1293, 1296 (2010) ("An adverse possessor has the burden of showing that the permission terminated and that the original owner had notice of the adverse use. The claimant's subjective beliefs and intent are not relevant . . . ." (citation omitted)); *Woodward v. Valvoda*, 2021 WY 5, ¶ 27, 478 P.3d 1189 ("Because the notice requirement is a fundamental part of an adverse possession claim, a claimant cannot establish a *prima facie* case by relying solely on his testimony as to his subjective hostile intent. He must introduce evidence that such intent was objectively made manifest by his observable words or actions." (cleaned up)).

Filed by Clerk of Supreme Court 07-31-2025

[¶25] The district court relied on Gary Meyer's testimony about twice mortgaging the property, but the record does not contain a mortgage. Again, this case was tried before adverse possession was an issue. To believe Gary Meyer's testimony about the mortgages, one must also believe the lenders did not confirm he had title to the property or twice made a mistake in examining title. More fundamentally, recorded documents cannot establish adverse possession because they are not evidence of hostile acts for purposes of adverse possession. *Cranston v. Winters*, 238 N.W.2d 647, 653 (N.D. 1976); *Black Stone Minerals v. Brokaw*, 2017 ND 110, ¶ 11, 893 N.W.2d 498 (recorded lease does not show actual possession of mineral estate for purposes of adverse possession). If Gary Meyer mortgaged the subject property despite not holding record title, that act did not exclude the true owner from possession or grant the mortgagee any more interest than Meyer possessed. *Merchants Bank of Rugby v. Haman*, 378 N.W.2d 869, 870–71 (N.D. 1985) (mortgage covers only interest held by mortgagor). Recorded documents do not support adverse possession for good and practical reasons: if they did, then any owner of real property would have to regularly examine his own title to ensure adverse documents had not been recorded. *Cranston*, 238 N.W.2d at 653 ("It is basic to our concept of record title that persons with interests in real estate may rely upon the record title without the necessity of checking the title as to subsequent transactions affecting the real estate, in the absence of possession sufficient to constitute adverse possession.").

[¶26] When we set aside the irrelevant testimony about Gary Meyer's subjective belief and mortgages relied on by the district court, the record evidence shows only that Gary Meyer lived and ran cattle on land titled in the name of his wife Dolores's parents, and he continued to live on the property after both Dolores and her parents had died and title passed to Gary's sons as trustees. We conclude the court's finding of hostile and exclusive acts to support adverse possession against a true owner in the context of a family relationship is clearly erroneous because we are firmly convinced the finding is not supported by clear and convincing evidence. We remand with instructions to quiet title in favor of the Meyer trustees.

Filed by Clerk of Supreme Court 07-31-2025

## III

[¶27] Gary Meyer claims the district court erred in ordering him to pay Mary Roth $52,500 in restitution for unjust enrichment.

[¶28] During the first appeal we reversed the district court's finding that Gary Meyer "was required to pay $52,500 for breaching the contracts with Mary Roth" because it failed to apply the statute of frauds and the debt was unenforceable under N.D.C.C. § 9-06-04(4). *Roth*, 2024 ND 113, ¶ 45. We stated: "The issues over loans may be a basis for recovery if the court finds Gary Meyer was unjustly enriched. If so, the court's findings on that issue must be made based on the evidence admitted at trial." *Id.*

[¶29] Our standard of review on appeal from a finding of unjust enrichment is well established:

> We review a district court's findings of fact for clear error. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made. A district court's determination whether the facts support a finding of unjust enrichment is a conclusion of law that is fully reviewable on appeal.

*Smestad v. Harris*, 2012 ND 166, ¶ 15, 820 N.W.2d 363 (cleaned up).

[¶30] Unjust enrichment requires "(1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law." *Smestad*, 2012 ND 166, ¶ 16 (quoting *Matter of Estate of Hill*, 492 N.W.2d 288, 295 (N.D. 1992)).

[¶31] The district court's findings are based on testimony that Mary Roth loaned Gary Meyer $52,500. Gary Meyer acknowledged that the checks were loans and not gifts and that he never repaid the loans from Mary Roth. On the basis of the

Filed by Clerk of Supreme Court 07-31-2025

evidence, the court found "(1) an enrichment of $52,500 to Gary; (2) Mary was impoverished because she could not personally use the $52,500; (3) there is a direct connection between Gary's enrichment and Mary's impoverishment; and (4) there was no justification for the enrichment and impoverishment; both parties agreed the checks were loans." The court found Mary Roth tried to recover the unpaid debt through a breach of contract claim but was barred. The court also found Mary Roth had no alternative remedy at law; therefore, all elements of an unjust enrichment claim were met.

[¶32] The district court's findings on unjust enrichment were based on trial testimony and other evidence in the record. The court's findings are supported by the record. The court's findings on unjust enrichment are not clearly erroneous. We affirm the court's second amended judgment ordering Gary Meyer to pay Mary Roth $52,500 in restitution relating to the loans.

IV

[¶33] We have considered the remaining issues and conclude they are either without merit or unnecessary to our decision. The court did not err in ordering Gary Meyer to pay Mary Roth restitution for unjust enrichment relating to the loans. We affirm that part of the second amended judgment. The district court erred in quieting title in Mary Roth and Aric Roth. We reverse the second amended judgment to the extent it quieted title in Mary Roth and Aric Roth and granted relief regarding access to the subject property. We remand for further proceedings consistent with this opinion, including consideration on the current record of any issues not reached as a result of erroneously quieting title in Mary Roth and Aric Roth.

[¶34] Jon J. Jensen, C.J.
    Lisa Fair McEvers
    Jerod E. Tufte
    Douglas A. Bahr

12

**Crothers, Justice, concurring and dissenting.**

[¶35] I agree with that part of the majority opinion affirming the district court's restitution award. While I would agree with the majority opinion if we were writing on a clean slate, I nevertheless believe we must affirm the district court's order under the mandate rule. I therefore respectfully dissent from that part of the opinion reversing the court's order quieting title in the Roths.

I

[¶36] On remand, the district court must follow directions from this Court:

> "On remand, district courts must follow the mandate rule. The mandate rule, a more specific application of law of the case, requires the trial court to follow pronouncements of an appellate court on legal issues in subsequent proceedings of the case and to carry the appellate court's mandate into effect according to its terms. This Court retains the authority to decide whether the district court scrupulously and fully carried out our mandate's terms."

*Walstad v. Walstad*, 2013 ND 176, ¶ 9, 837 N.W.2d 911 (cleaned up).

[¶37] Our remand of the quiet title issue directed the district court "to find who was in possession of the subject property during the relevant periods and whether that possession was adverse to the owner for the requisite amount of time. Next, the court must find who the true owner is, to quiet title in their favor . . . ." *Roth*, 2024 ND 113, ¶ 22.

[¶38] We explained the proof requirements for adverse possession in our previous decision in this case:

> "To satisfy the elements for adverse possession, the acts on which the claimant relies must be actual, visible, continuous, notorious, distinct, and hostile, and of such character to unmistakably indicate an assertion of claim of exclusive ownership by the occupant. For the continuous element, N.D.C.C. § 28-01-07 provides a presumption against the adverse possession of real property unless

13

it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action. A party who adversely possesses with or without a written instrument must hold the land continuously for 20 years. N.D.C.C §§ 28-01-07 and 28-01-08. For the requirements of adverse possession to be met, the true owner must be removed from possession and kept out for the statutory period by an open, visible, and exclusive possession of the claimant without license or consent of the owner."

*Roth*, 2024 ND 113, ¶ 19 (cleaned up). "Whether there has been an adverse possession is a question of fact, which will not be reversed on appeal unless it is clearly erroneous." *Moody v. Sundley*, 2015 ND 204, ¶ 11, 868 N.W.2d 491. The scope of our remand on adverse possession was narrowly stated:

"We reverse and remand for the district court to find who was in possession of the subject property during the relevant periods and whether that possession was adverse to the owner for the requisite amount of time. Next, the court must find who the true owner is, to quiet title in their favor, and if necessary, to make findings on unjust enrichment."

*Roth*, ¶ 22.

[¶39] On the question who was in possession of the subject property during times relevant to this case, the district court found:

"The testimony the Court received at trial was that Gary had lived or ran cattle on the subject property for over fifty (50) years. During those years, there had been four houses on the property, including the house built by Gary and Mary. The Court received no evidence that the Ehrmantrouts utilized any part of the subject property after the 1994 grant. Rather, the only testimony the Court received pertained to Gary's possession and use of the subject property, exclusively for decades, before and after the 1994 grant."

[¶40] On the question whether the possessor's occupancy was hostile, the district court found:

14

"The next fact the Court has to find is whether the Ehrmantrouts and the Meyers had an agreement allowing the Meyers to remain on the subject property after the September 1994 grant. Black's Law Dictionary defines an 'agreement' as 'a mutual understanding between two or more persons . . .' *Black's Law Dictionary*, 74 (8th ed. 2004).

"Gary was clear in his testimony—he believed he owned the subject property. He justified his belief by explaining: 'I've lived there since '62. I assumed I owned it. I had it mortgaged. We got it out of mortgage and we remortgaged it and, yeah, I owned it.' *Docket No. 317, pg. 96*. With such a strong stance taken by Gary, that he owned the property outright, enough to place multiple mortgages on it, the Court finds the Ehrmantrouts and Gary could not have had an agreement allowing the Meyers to remain on the property after the 1994 grant. Such agreement would be in direct conflict with Gary's belief that he owned the subject property."

[¶41] This Court reviews appeals from quiet title judgments under the clearly erroneous standard. *Great Plains Royalty Corp. v. Earl Schwartz Co.,* 2022 ND 156, ¶ 13, 978 N.W.2d 715. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, this Court is convinced a mistake has been made." *Id.* (cleaned up).

[¶42] The district court addressed the issues on remand as directed by this Court's mandate. *See Walstad,* 2013 ND 176, ¶ 9 (stating "district courts must follow the mandate rule"). The court found that Gary Meyer was in possession of the subject property for more than 50 years, and that his possession of the subject property was hostile to the Ehrmantrouts' possession in several ways, most prominently when he acted as if he owned the subject property by living on the land, ranching it, mortgaging it and openly holding out that he owned it. While the court did not expressly address the "special rigor" required to prove adverse possession when family members are involved, *see Torgerson v. Rose,* 339 N.W.2d 79, 84 (N.D. 1983), it satisfied the consideration by concluding any

15

permissive arrangement between Gary Meyer and the Ehrmantrouts was disproved by Gary Meyer's assertion he owned the property outright.

[¶43] The district court's findings are supported by evidence adduced at trial, and those findings are not clearly erroneous. I therefore believe we should affirm the court's judgment quieting title in the Roths and declining to quiet title in the Meyer trustees.

II

[¶44] Because I would affirm the district court's quiet title order, it would be necessary for this Court to reach the Meyers' claim that the court erred in including additional terms and conditions regarding access to the subject property in its second amended judgment.

[¶45] The district court's findings of fact do not address access to the subject property and it does not appear the issue was expressly litigated. After trial, the court asked the Roths to draft a proposed judgment. The Roth's proposed judgment, which was entered by the court, stated "Defendants shall not take any action to prevent the Plaintiffs from accessing the Subject Property." The Meyers objected to this inclusion. The court did not address the objection. The same language was included in the second amended judgment that was entered after remand.

[¶46] The subject property is a 10-acre section situated in the middle of 640 acres. According to evidence adduced at trial, the only road accessing the subject property runs through section 13 that surrounds the land. The district court's directive that the Meyers not prevent the Roths from accessing the subject property is not explained so we do not know if the court intended to enjoin the Meyers from interfering with the Roths' access, or whether the directive was intended to create an easement of some sort. The court's lack of supporting findings are fatal to either conclusion.

16

[¶47] Rule 52(a)(1), N.D.R.Civ.P., requires, "In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." "The court must specifically state the facts upon which its ultimate conclusion is based on." *Matter of R.A.S.*, 2008 ND 185, ¶ 8, 756 N.W.2d 771. In *Matter of R.A.S.* we explained:

> "The purpose of the rule is to provide the appellate court with an understanding of the factual issues and the basis of the district court's decision. Because this Court defers to a district court's choice between two permissible views of the evidence and the district court decides issues of credibility, detailed findings are particularly important when there is conflicting or disputed evidence. This Court cannot review a district court's decision when the court does not provide any indication of the evidentiary and theoretical basis for its decision because we are left to speculate what evidence was considered and whether the law was properly applied. The court errs as a matter of law when it does not make the required findings."

*Id.* (cleaned up).

[¶48] If the district court's judgment was intended to be an easement, it fails for lack of adequate delineation. Section 47-05-02.1(1), N.D.C.C., requires that any easement "be properly described and shall set out the area of land covered by the interest in real property." The court's judgment failed to specify the description of any easement granted to access the property. Given the general description in the judgment, Roth could seemingly access the property by any route through section 13. This Court in *Otter Tail Power Co. v. Von Bank*, held an easement must be properly described because it is "essential so that both the owner of the easement and the owner of the property subjected to it may know exactly what their rights are with respect to their different interests." 8 N.W.2d 599, 603 (N.D. 1942).

[¶49] If the district court's judgment was intended to enjoin the Meyers from interfering with access to the subject property, that relief also suffers from fatal flaws.

17

[¶50] First, the Roths originally requested certain injunctive relief. Their complaint stated:

> "[the Meyers] continue to enter onto the subject property and try to forcibly remove Plaintiffs from their home, using threats, harassment, and intimidation. [ ] The Defendant further continue[s] to exercise unauthorized control over and fraudulently transfer title to Mary's personal property, including certain cattle. [ ] The continued misconduct, unauthorized actions, and fraudulent conduct has injured and will continue to injure and irreparably harm the Plaintiffs."

However, they withdrew their claim for injunctive relief prior to trial and the district court dismissed that claim. Thus, the Roths waived any direct claim for injunctive relief.

[¶51] We have recognized that even in the absence of a direct request for injunctive relief, "[a] court of equity has authority to grant as full relief as is sought by the pleadings and within the scope of proof." *State v. Amerada Petroleum Corp.*, 71 N.W.2d 675, 679 (N.D. 1955). In *Farm Credit Bank of St. Paul v. Brakke*, we heard an appeal regarding a quiet title action in which the district court also "permanently enjoined the Brakkes from interfering with [Farm Credit Bank] and Kirk's ownership of the two tracts of land." 483 N.W.2d 167, 169 (N.D. 1992). The Brakkes argued that the district court erred in entering a permanent injunction and that the injunction was too broad. *Id.* Farm Credit Bank and Kirk argued the injunction was "the only means to prohibit the Brakkes from interfering with their lawful ownership of the two tracts of land." *Id.* While it is unclear if the district court entered the injunction through its own initiative, this Court stated:

> "Section 32-05-04, N.D.C.C., authorizes a final injunction to prevent the breach of an obligation when damages are insufficient to afford adequate relief. Injunctive relief is appropriate to prevent a threatened disturbance in the peaceable use, enjoyment, and possession of real property. The decision to grant or deny injunctive

18

relief rests in the sound discretion of the trial court, and its determination will not be reversed on appeal absent an abuse of discretion."

*Id.* at 170 (cleaned up).

[¶52] Here, the district court may have intended the language to be an injunction to protect the Roths' use and possession of the subject property. If that was the case, the court did not make findings supporting the injunction, as required by law. N.D.R.Civ.P. 52(a)(1); *see also Matter of R.A.S.*, 2008 ND 185, ¶ 8 (stating "[t]he court must specifically state the facts upon which its ultimate conclusion is based on").

[¶53] Without adequate findings, we "cannot review a district court's decision when the court does not provide any indication of the evidentiary and theoretical basis for its decision because we are left to speculate what evidence was considered and whether the law was properly applied." *Matter of R.A.S.*, 2008 ND 185, ¶ 8 Therefore, I would reverse the district court's inclusion of additional terms for access to the subject property.

[¶54] Daniel J. Crothers

Filed by Clerk of Supreme Court 07-31-2025